759 F.2d 989
 37 Fair Empl.Prac.Cas. 756,
36 Empl. Prac. Dec. P 35,124
Miriam MEIRI, Plaintiff-Appellant,
v.
Claudius DACON, Roger Woods, Maryanne Monteodorisio, Stanley
McKinley, Adele Stern and the Immigration and
Naturalization Service, Defendants-Appellees.
 No. 874, Docket 84-6337.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 27, 1985.
Decided April 2, 1985.
 
 Lloyd Somer, New York City, for plaintiff-appellant.
 Gerald T. Ford, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., and Jane E. Booth, New York City, on the brief), for defendants-appellees.
 Before KAUFMAN, OAKES, and MESKILL, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 This case requires us to address the propriety of granting summary judgment in an employment discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. Miriam Meiri alleged she was discharged from her clerk-stenographer position at the Immigration and Naturalization Service ("INS") because of her religion. The district court granted summary judgment in favor of INS, finding that Meiri had failed to establish a prima facie case of employment discrimination. 607 F.Supp. 22. Although we are inclined to agree with Meiri that a prima facie case was indeed made, we nonetheless affirm the district court's grant of summary judgment because Meiri failed to proffer any evidence suggesting that the stated reasons for her discharge were merely a pretext for religious discrimination.
 
 
 2
 Mindful that "the court cannot try issues of fact, it can only determine whether there are issues to be tried," Heyman v. Commerce and Industry Co., 524 F.2d 1317, 1319-20 (2d Cir.1975), we shall proceed carefully to limn the relevant facts necessary to resolve the instant confrontation between a claim of employment discrimination based on religion and the pragmatic needs of the judiciary.
 
 I.
 
 3
 The saga of Miriam Meiri, an Orthodox Jewish woman, began on May 14, 1979, when she was given a conditional appointment by the INS as a clerk-stenographer. Her appointment was subject to a one-year probationary period, during which Meiri was required to demonstrate her fitness for continued employment in the areas of performance, conduct and general character traits.[1] Because the task of determining an employee's occupational aptitude may, in certain instances, be extremely difficult, the INS has instructed its supervisors to "[o]bserve the employee's conduct, general character traits and performance closely." Where circumstances so warrant, the employee is to be separated "without undue formality." The responsibility of assessing Meiri's job performance fell to Claudius Dacon, a black Protestant male, who was the Record Administration and Information Section Supervisor with the INS at 26 Federal Plaza in New York City.
 
 
 4
 During the first nine months of her employment, Meiri exhibited numerous instances of inappropriate behavior that expressly contravened established INS policy, committed a variety of inexplicable, imprudent and indiscrete acts and generally usurped power wherever possible. We believe it would prove instructive to describe seriatim certain undisputed actions that exemplified Meiri's employment difficulties:
 
 
 5
 1. Meiri, without authority, wrote a letter to the United States Vice-Counsel in Vancouver, Canada.
 
 
 6
 2. Meiri, again absent authorization, wrote caustic memoranda to supervisors in other sections. She ordered one supervisor to return certain forms by a deadline that she imposed without authority; Meiri castigated another for alleged violations of timekeeping;[2] and she sent an unauthorized memorandum announcing the promotion of an employee.
 
 
 7
 3. Meiri criticized the Chief of the Travel Control Unit about matters that were entirely outside her position's limited purview.
 
 
 8
 4. Meiri composed and mailed an unauthorized letter on official government stationery to an alien, stating that he should contact her to retrieve "important documents" he had lost.
 
 
 9
 5. Meiri repeatedly interrogated incoming telephone callers, requiring them to respond to a barrage of prying questions.
 
 
 10
 6. Although Meiri frequently was asked to refrain from conversing with visiting attorneys, she often became embroiled in disputes over "political affairs" or "current events."
 
 
 11
 7. By speaking to visiting attorneys and others in Hebrew, French, Italian, German and Spanish, Meiri violated the INS policy prohibiting employees from speaking to visitors in foreign languages.
 
 
 12
 8. Meiri acknowledged that she had occasionally consoled employees after they had been reprimanded by Dacon, and discussed with them possible avenues of recourse.
 
 
 13
 Prompted by this series of events, Dacon made several attempts to counsel Meiri and provide her with guidance. His efforts, however, appear to have been unavailing. Finally, on February 21, 1980, Dacon met with Meiri to repair their damaged relationship and stem the mounting tide of improper actions. Again, his efforts at constructive criticism were met only with resistance, as Meiri announced she was fully satisfied with her job performance and, thus, was entirely unwilling to accept counseling. Angered by her recalcitrance and utterly disappointed with her job performance, Dacon, on March 3, informed Meiri that he would recommend she be terminated during her probationary period. On March 19, the INS informed Meiri she would be terminated on March 28, 1980.[3]
 
 
 14
 Believing her discharge was motivated by racial and religious animus, Meiri filed a formal complaint with the INS. An Equal Employment Opportunity officer investigated the circumstances surrounding Meiri's termination and, in a report issued on June 2, 1981, found her discharge was based on "an acceptable and equitable decision" by her supervisor. On January 21, 1983, the complaint adjudication officer for the Department of Justice similarly concluded that Meiri's separation was for lawful reasons and did not violate Title VII.
 
 
 15
 Ten days later, the travails of Meiri began anew in the United States District Court for the Southern District of New York. There, Meiri filed a Title VII suit, pro se, alleging the INS had discriminated against her because she was Jewish.[4]
 
 
 16
 On April 7, 1983, the INS filed an answer, in which it denied Meiri's allegations of religious discrimination, buttressing this denial with twelve job-related complaints proffered by Dacon. Of these, Meiri disputed the accuracy of only four, conceding that the remaining eight were true. She did, however, posit exculpatory explanations for certain of her actions. Once again, Meiri admitted the verity of Dacon's charges when the INS took her deposition in October 1983. Armed with a number of undisputed facts that would appear to establish that Meiri was terminated for legitimate, nondiscriminatory reasons, the INS moved for summary judgment on December 15, 1983. In support of its motion, the INS offered the affidavits of Claudius Dacon, Adele Stern (Dacon's secretary who was Jewish) and Joseph Schleifer (an Orthodox Jew who also worked for Dacon), as well as documented evidence of Meiri's inappropriate actions. Three days later, on December 18, 1983, Meiri submitted answering papers,[5] in which she propounded by reference to subjective criteria that her termination was animated by religious discrimination.[6] Oral argument was heard on February 10, 1984.
 
 
 17
 On October 1, 1984, Judge Owen granted the INS's motion for summary judgment and dismissed Meiri's complaint. The district court concluded that Meiri had failed to establish a prima facie case of employment discrimination because she was not qualified for the position from which she was terminated and because she was not replaced by a person outside her protected class. Judge Owen relied extensively on the reasons for termination proffered by Dacon and conceded by Meiri. He also found particularly inappropriate Meiri's "habit of engaging certain attorneys and other INS visitors in unnecessary conversations" in foreign languages. In a footnote, the district judge noted that even if the evidence could be construed to establish a prima facie case of discrimination, the INS demonstrated that Meiri was terminated for legitimate, nondiscriminatory reasons. Insofar as Meiri "presented no evidence whatsoever to show that these reasons were a pretext for discrimination," Judge Owen decided summary judgment was proper. Meiri, now represented by counsel, appeals.
 
 II. PROOF IN A TITLE VII CASE
 
 18
 In striking contrast to the welter of decisional law spawned by those courts that have toiled in the amorphous vineyards of Title VII,[7] the controlling legal standards appear deceptively straightforward:
 
 
 19
 First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 20
 Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); see United States Postal Serv. v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983).
 
 
 21
 This trifurcated inquiry not only specifies and assigns evidentiary burdens, but also injects a fine-tuning element into the presentation of proof in all Title VII cases. The net result is that an initially vague allegation of discrimination is increasingly sharpened and focused, until the ultimate inquiry is one that is amenable to judicial resolution.[8]
 
 
 22
 In the action before us, we are called upon to determine whether the district court's grant of summary judgment at the prima facie phase was precipitous and, if so, whether summary judgment was appropriate at the "pretext stage." In so doing, we must wrestle with the peculiarities of and interrelationships among the three inquiries, as well as address the propriety of granting summary judgment in discrimination actions, where motivation and intent are crucial. It is to these questions that we now turn.
 
 A. Prima Facie Case
 
 23
 To establish a prima facie case of termination based on religious discrimination, Meiri must show: (i) that she belonged to a protected class, (ii) that her job performance was satisfactory, (iii) that she was discharged and (iv) that, after she was discharged, "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, supra, 411 U.S. at 802, 93 S.Ct. at 1824. In granting summary judgment in favor of the INS, the court below concluded that Meiri failed to adduce sufficient evidence to warrant a trial on whether she could establish a prima facie case of religious discrimination. Relying on the litany of work shortcomings proffered by Dacon and conceded by Meiri, the district judge found that Meiri had failed to raise any factual issues concerning her job performance. In addition, Judge Owen held that because Meiri did not demonstrate that her clerk-stenographer position was filled by a "person outside of her protected class," she could not even make out a prima facie case of discrimination. We question these rulings.
 
 
 24
 In determining whether an employee's job performance is satisfactory, courts may--as they often must--rely on the evaluations rendered by supervisors. See Knight v. Nassau County Civil Serv. Comm., 649 F.2d 157, 162 (2d Cir.1981). After all, job performance cannot be assessed in a vacuum; the ultimate inquiry is whether an employee's performance "meets his employer's legitimate expectations." Huhn v. Koehring Co., 718 F.2d 239, 244 (7th Cir.1983); see Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir.1980); Reich v. New York Hosp., 513 F.Supp. 854, 859 (S.D.N.Y.1981). Although courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decisionmaking process, see, e.g., Sweeney v. Research Foundation of the State Univ. of N.Y., 711 F.2d 1179, 1187 n. 11 (2d Cir.1983), they must also allow employees "to show that the employer's demands were illegitimate or arbitrary," Kephart, supra, 630 F.2d at 1223. As evidenced by her deposition, complaint and affidavit, Meiri has, in effect, questioned the legitimacy of her employer's expectations. Moreover, insofar as Meiri repeatedly requested a written description of her job responsibilities, her allegations that the INS provided "insufficient supervision," see Reich, supra, 513 F.Supp. at 859, and failed to make her "aware of just what [its] expectations [were]," Kephart, supra, 630 F.2d at 1223, find support in the record.
 
 
 25
 Furthermore, although certain courts--including the district court in this action--have required an employee, in making out a prima facie case, to demonstrate that she was replaced by a person outside the protected class, see Lee v. Russell County Board of Education, 684 F.2d 769, 773 (11th Cir.1982); Wade v. New York Telephone Co., 500 F.Supp. 1170, 1176 (S.D.N.Y.1980), we believe such a standard is inappropriate and at odds with the policies underlying Title VII. From a practical perspective, requiring a plaintiff to demonstrate that her job was filled by a "person outside the protected class" could create enormous difficulties involving the identification of the protected class. In this case, for example, it is unclear whether the protected class would be followers of Orthodox Judaism or followers of Judaism generally.
 
 
 26
 We believe the appropriate inquiry should be whether the employer continued to seek applicants to fill the position. After Meiri's discharge, Dacon attempted to find a suitable replacement for the clerk-stenographer job. The fact that the position was ultimately eliminated is of little relevance and should not sound a death knell to Meiri's Title VII claim. The elements of proof in employment discrimination cases were not intended to be "rigid, mechanized or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); see Loeb v. Textron, Inc., 600 F.2d 1003, 1017 (1st Cir.1979). Rather, they were intended only to promote the general principle that a Title VII plaintiff must carry the initial burden of offering evidence adequate to "raise[ ] an inference of discrimination." Furnco, supra, 438 U.S. at 577, 98 S.Ct. at 2949; see also International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). When examined against these conceptual underpinnings, we believe the fact that Meiri was not replaced by a non-Jew--indeed, she was never replaced--may weaken, but certainly does not eliminate, the inference of discrimination.[9]
 
 
 27
 Assuming arguendo that Meiri did in fact offer evidence sufficient to defeat summary judgment at the prima facie[10] stage, we must now address whether the INS satisfied its burden of rebuttal.
 
 B. Employer's Rebuttal
 
 28
 Because establishment of the prima facie case creates an inference that the employer unlawfully discriminated against the employee, the burden then falls upon the employer to produce evidence that the employee was discharged for a legitimate, nondiscriminatory reason.[11] See Burdine, supra, 450 U.S. at 254, 101 S.Ct. at 1094. Placing this burden of production on the employer serves a dual purpose. First, it enables the employer, by proffering legitimate reasons for the alleged discriminatory discharge, to rebut the inference of discrimination that arises from proof of the prima facie case. In addition, the burden of production frames the factual issue with sufficient clarity to afford the employee a full and fair opportunity to demonstrate pretext. To this end, the employer's explanation of its reasons must be clear and specific. See Loeb, supra, 600 F.2d at 1011-12. Were vague or conclusory averments of good faith sufficient to satisfy the employer's burden, Title VII employees seeking to demonstrate pretext would be unfairly handicapped. Cf. Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972) (averments of good faith in individual selections cannot dispel prima facie case of systematic discrimination).
 
 
 29
 To a large extent, of course, the strength or weakness of the inference of discrimination created by the employee's prima facie case defines the nature of the employee's rebuttal.[12] Because Meiri's clerk-stenographer position was never filled, the inference of religious discrimination was weakened and the burden on the INS to produce evidence that she was in fact terminated for a legitimate nondiscriminatory reason was commensurately less onerous. It may be argued, however, that the inference of discrimination is far more powerful in employee discharge cases than it is in the context of failures to hire or to promote. Although it is difficult to measure precisely the strength or weakness of the inference of discrimination, we believe it is clear that the INS satisfied its burden of production by proffering a veritable arsenal of undisputed, documented examples of Meiri's inappropriate actions at work. Indeed, the overwhelming evidentiary presentation provided an ample basis for a trier of fact to find that Meiri's discharge was based not upon a discriminatory animus, but rather upon an honest belief that her job performance simply did not measure up to that required of probationary employees.
 
 
 30
 In addition to demonstrating Meiri's usurpation of authority and her contravention of prescribed INS policies, the undisputed facts also established Meiri's profound inability to get along with her co-workers. This represents a legitimate, nondiscriminatory reason for an employment decision. See Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 73 (1st Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); Frausto v. Legal Aid Society, 563 F.2d 1324, 1328-29 (9th Cir.1977). The fact that the INS did not merely articulate--but substantially established--legitimate, nondiscriminatory reasons for her discharge rendered more difficult Meiri's task of proving pretext.[13]
 
 C. Proving Pretext
 
 31
 After the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee must be afforded an opportunity to prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination. See Burdine, supra, 450 U.S. at 256-57, 101 S.Ct. at 1095. An employee may satisfy this ultimate burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256, 101 S.Ct. at 1095.
 
 
 32
 In evaluating the propriety of granting summary judgment at the pretext stage, we are mindful that "the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material issue genuinely in dispute." Patrick v. LeFevre, 745 F.2d 153, 161 (2d Cir.1984). We believe the INS met this burden by supporting its motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c), with depositions and affidavits setting forth numerous undisputed examples of inappropriate behavior exhibited by Meiri during the course of her probationary period and demonstrating that Dacon did not act in a discriminatory manner toward other Jewish employees. Meiri was then required to offer evidence that the reasons for her discharge were other than those assigned by the INS; that the stated reasons were merely a pretext for religious discrimination. See Fed.R.Civ.P. 56(e); Barnett v. Howaldt, 757 F.2d 23, 25-26 (2d Cir.1985); Patrick, supra, 745 F.2d at 158-60.
 
 
 33
 Although Meiri alleged that "[Dacon] conspired to get rid of [her]"; that he "misconceived [her] work habits because of his subjective prejudice against [her] Jewishness"; and that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places .... It's all around us," such conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e). See Zahorik v. Cornell Univ., 729 F.2d 85, 94 (2d Cir.1984); Mason v. Continental Illinois Nat. Bank, 704 F.2d 361, 366 (7th Cir.1983); Nash v. Jacqueline Cochran, Inc., 548 F.Supp. 676, 678 (S.D.N.Y.1982) (Weinfeld, J.); Reich, supra, 513 F.Supp. at 861.
 
 
 34
 In so concluding, we are of course mindful that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. See Patrick, supra, 745 F.2d at 159. The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation. See Nash, supra, 548 F.Supp. at 678.
 
 
 35
 As we have stated, "[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir.1972). Meiri has provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext. She has offered no evidence suggesting that the INS's treatment of her differed from that accorded other non-Jewish employees; that the INS departed from its general policies in discharging her; or that non-Jewish persons on probation who acted similarly were retained.
 
 
 36
 To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases. Given the ease with which these suits may be brought and the energy and expense required to defend such actions, we believe the trial judge properly granted summary judgment.
 
 III.
 
 37
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 According to the INS administrative manual, the one-year probationary period:
 provides the final indispensable test of actual performance on the job, which no preliminary testing methods can approach in validity .... [T]he probationary period, properly employed, provides protection against the retention of any person who, in spite of having passed preliminary tests, is found in actual practice to be lacking in fitness, and capacity to acquire fitness, for permanent Government service.
 
 
 [2]
 Because of its acerbic tone, we find it useful to set forth the contents of this memorandum in its entirety:
 It will be greatly appreciated if you don't make my timekeeping job more difficult and confusing by erasures, late disclosures of hours worked and general indifference to required, official procedure. Freedom, independence and not having to account to anybody about anything is terrific I know, but they don't fit into the service and cannot be appreciated when I am prevented from properly fulfilling my duties--so please be cooperative for a change.
 Meiri characterized this memorandum as "friendly."
 
 
 [3]
 After Meiri was discharged, her position as clerk-stenographer remained vacant for approximately one year, during which time Dacon searched for a suitable replacement. Eventually, the duties associated with this position were assumed by other employees and the personnel office ultimately decided to eliminate the position
 
 
 [4]
 In addition to the INS, Meiri's complaint named five individuals as defendants: (1) Mr. Dacon; (2) Adele Stern, Dacon's Secretary; (3) Maryanne Monteodorisio, the local personnel officer; (4) Roger Woods, the INS Assistant Regional Commissioner for personnel; and (5) Stanley McKinley, the INS Regional Commissioner. On December 15, 1983, the defendants moved to dismiss the INS and the individual defendants as improper parties and to substitute Alan C. Nelson, in his official capacity as INS Commissioner, as the sole defendant pursuant to 42 U.S.C. Sec. 2000e-16(c). The district court granted this motion, and dismissed the claims against the named defendants. Meiri does not challenge this ruling on appeal
 
 
 [5]
 The district court treated these papers, which demanded judgment in her favor, as a cross-motion for summary judgment
 
 
 [6]
 By letter dated February 20, 1984, Meiri submitted twenty-four exhibits to the court to substantiate her claim of employment discrimination
 
 
 [7]
 The provision of Title VII, 42 U.S.C. Sec. 2000e-2(a), on which Meiri principally relies, provides:
 It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.... (emphasis added).
 
 
 [8]
 Although judges strive to be "the master of both microscope and telescope," in practice, we tend to be more adroit at resolving the narrow inquiry. C. Hughes, Mr. Justice Brandeis 3 (F. Frankfurter, ed. 1932)
 
 
 [9]
 Were we to adopt a mechanical approach, we would be required to exempt from Title VII coverage an employer that, in furtherance of a broad-based policy of employment discrimination, discharged one hundred minority employees, retained nine hundred non-minority employees, and, by making additional overtime available to the nine hundred retained employees, found it unnecessary to replace any of the discharged employees. Cleary, such an employment policy vitiates the letter and spirit of Title VII, and should not be immune from proscription by reason of an overly formalistic interpretation of the elements comprising the prima facie case. Indeed, in Connecticut v. Teal, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), the Court stated that "Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired. That answer is no more satisfactory when it is given to victims of a policy that is facially neutral but practically discriminatory." Id. at 455, 102 S.Ct. at 2535
 
 
 [10]
 Our belief that the grant of summary judgment by the district court may have been somewhat precipitous is bolstered by the de minimis nature of a plaintiff's burden of proof at the prima facie stage. See Sweeney, supra, 711 F.2d at 1184. In any event, Title VII's sophisticated evidentiary calculus augurs against tarrying long over this question
 
 
 [11]
 Because it is incumbent upon the employee to prove that the nondiscriminatory reason was pretextual, the employer need not prove the absence of discriminatory motive or that the discharge was motivated by a legitimate reason. See Loeb, supra, 600 F.2d at 1012
 
 
 [12]
 Although courts have fashioned a tripartite construct to evaluate Title VII claims, we must withstand the temptation to treat each stage as an independent inquiry. Indeed, the efficacy of employment discrimination law depends upon the interdependence of the prima facie case, the employer's rebuttal and proof of pretext. See Lieberman v. Gant, 630 F.2d 60, 66-67 (2d Cir.1980) (noting relationship between employer's rebuttal and employee's proof of pretext)
 
 
 [13]
 The reasonableness of the employer's reasons for discharge is, of course, probative of the question whether they are pretexts. "The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext." Loeb, supra, 600 F.2d at 1012 n. 6