Minnie **CARLTON**, Plaintiff,

v.

**INTERFAITH MEDICAL CENTER**, Defendant.

No. 83 CV 1485.

United States District Court,
E.D. New York.

June 18, 1985.

Charles E. Morrison, New York City, for plaintiff.

Guggenheimer & Untermyer, David H. Diamond and Richard A. Covin, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, a former employee of defendant Interfaith Medical Center ("Interfaith"), brings this action for damages and injunctive relief arising from the conditions of her former employment and from her ultimate discharge. Plaintiff alleges violations of the Equal Pay Act, 29 U.S.C. § 206; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626; Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e–5; and 42 U.S.C. § 1981. In addition, plaintiff contends that her lay-off was in breach of an alleged employment agreement and of an implied covenant of good faith. Finally, plaintiff alleges that Interfaith fraudulently induced her to continue working at the hospital and that she relied on that inducement to her detriment.

Defendant moves for summary judgment. Fed.R.Civ.P. 56. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### Facts

Plaintiff, a fifty-nine year old black female, was employed by Jewish Hospital and Medical Center of Brooklyn ("JHMCB") from October 9, 1969 until December 31, 1982. From 1969 until 1974, plaintiff worked as a registrar in the outpatient area of the accounting department. From 1974 until her discharge, plaintiff held the title of Supervisor-OPD Registration. Interfaith contends, however, that plaintiff did not perform supervisory work.

On January 1, 1983, Interfaith, a New York not-for-profit corporation, commenced operations of an acute health care facility on the former site of JHMCB, which had filed a petition under Chapter 11 of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* All JHMCB employees initially were retained by Interfaith to insure continuity of

patient care. As a condition to approving the establishment and operation of Interfaith, however, the State of New York mandated a substantial reduction in the number of patient beds and employees. Accordingly, significant lay-offs took place at Interfaith in early 1983. Plaintiff was among the several hundred employees, including 33 non-union[1], non-professional employees, laid off.

Plaintiff contends that on February 5, 1983, she was advised by her supervisor, Ms. Porter, that no staff member's job would be in jeopardy as a result of the merger. Ms. Porter, a black female, states in her affidavit that she cannot recall making such a representation. In any event, plaintiff was advised on or about February 7, 1983 that she would be laid off effective February 18, 1983.

### Discussion

#### Equal Pay Act

29 U.S.C. § 206(d) states that:

No employer ... shall discriminate ... on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work....

■ Plaintiff bears the burden of proving equality of work. *Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96, 99–100 (8th Cir.1980). The relevant inquiry is "whether the performance of the jobs requires substantially equal skill, effort and responsibility under similar working conditions." *Orahood v. Board of Trustees, et al.,* 645 F.2d 651, 654 (8th Cir.1981).

Plaintiff claims that she was paid less than a male supervisor who performs an allegedly comparable function in the in-patient accounting department. Interfaith contends, however, that a supervisor of in-patient accounting deals with more paper work and supervises more employees than does his out-patient counterpart, and, thus, that the two jobs are not equal.

■ "[O]n a motion for summary judgment the Court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce and Industry Insurance Company,* 524 F.2d 1317, 1319–20 (2d Cir.1975). Clearly, material questions of fact exist as to (a) whether plaintiff did, in fact, perform supervisory duties, and (b) whether the supervisory positions in the in-patient and out-patient departments involve equal skill, effort and responsibility performed under similar working conditions. Accordingly, defendant's motion for summary judgment on the Equal Pay Act claim is denied.[2]

#### Discriminatory Discharge

■ Plaintiff alleges that her lay-off constitutes age, sex and race discrimination, in violation of the ADEA, Title VII, and 42 U.S.C. § 1981. The Supreme Court has set forth the controlling legal standards regarding the burden of proof in such cases:

First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ...

1. Plaintiff has not been represented by a union since 1974.

2. Defendant also argues that it is liable, if at all, only for Equal Pay Act violations occurring on or after January 1, 1983, the date of the merger. The presence of this issue also precludes summary judgment, however, since "the test for successor liability is fact specific and must be conducted 'in light of the facts of each case....'" *In re National Airlines, Inc.,* 700 F.2d 695, 698 (11th Cir.1983) (quotation omitted). The factors to be considered include (1) whether Interfaith had notice of the violations, (2) whether the predecessor hospital is in a position to provide relief, (3) whether there exists a substantial continuity of business, (4) whether the supervisory personnel is substantially the same, and (5) whether the same jobs exist under substantially the same working conditions. *See E.E.O.C. v. Sage Realty Corp.,* 507 F.Supp. 599, 612 n. 20 (S.D.N.Y.1981).

Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

■ Even assuming that plaintiff has made out a *prima facie* case of discrimination, she has adduced no evidence whatsoever to demonstrate that Interfaith's proffered reasons for her discharge are pretextual.

Interfaith asserts, initially, that plaintiff's lay-off was part of a massive reduction in force which was mandated by the State of New York as a condition to certifying Interfaith's operation. This fact cannot be disputed, and indeed, is substantiated by a newsletter article attached to plaintiff's responsive papers. *See* Plaintiff's Ex. # 4. Of course, the mere existence of a reduction in force scenario does not remove defendant's actions from the scrutiny of this Court, since the method defendant chooses to carry out that force reduction could be discriminatory. *See Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983). When faced with such a scenario, however, the courts have placed greater emphasis on the requirement that plaintiff prove intent to discriminate. *See Williams v. General Motors, Corp.,* 656 F.2d 120, 128 (5th Cir. 1981); *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 343 (D.C.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983).

Interfaith provides a legitimate non-discriminatory business reason for laying off plaintiff Carlton. The affidavits submitted by Interfaith reflect that to achieve the mandated force reductions, a business decision was made to reorganize the out-patient accounting department. The plan was to eliminate the two intermediate supervisory positions held by plaintiff and another female and to create, instead, a new position of assistant manager. That position, which entails an expanded range of duties, was filled by a black female who was transferred from the in-patient accounting area where her position also had been eliminated.

Plaintiff's former supervisor, Valerie Porter, a black female, indicated that she recommended plaintiff's lay off, in part, because she concluded that plaintiff was not performing supervisory work.[3] Clearly, it is the perception of the decision-maker, and not that of plaintiff herself, which is relevant. *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). Moreover, Porter states in her affidavit that neither race, sex nor age was a factor in her recommendation.

Inasmuch as Interfaith has articulated a legitimate, non-discriminatory reason for plaintiff's discharge, plaintiff, to survive a motion for summary judgment, must "prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination." *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir. 1985). Mere conclusory allegations of discrimination will not suffice. *Zahorik v. Cornell University,* 729 F.2d 85, 94 (2d Cir.1984).

■ Plaintiff asserts that direct and circumstantial evidence exists in the form of "memorandums, notices, letters and statistics" tending to show that age was a factor in Interfaith's decision to discharge her. Insofar as the memoranda, notices and letters are concerned, plaintiff fails to provide details as to what documents she is referring to and how they indicate that age is a factor. Clearly, the documents she has submitted fail to provide the slightest hint

---

**3.** Defendant also has provided evidence that plaintiff received several less than satisfactory performance evaluations in 1980–81. Plaintiff's 1982 evaluation reflects significant improvement. It is unclear whether plaintiff's supervisor considered the 1980–81 evaluations in making her recommendation that plaintiff be laid off.

that either age, race or sex was a factor in Interfaith's decision.

Moreover, plaintiff admits that no one in a supervisory capacity at Interfaith ever made any disparaging remarks about her race, sex or age; nor did anyone indicate that her lay-off was because of her race, sex or age.

■ Plaintiff relies primarily upon statistical evidence. Although it is clearly proper for a plaintiff to rely on statistical evidence in proving pretext, *McClain v. Mack Trucks, Inc.*, 532 F.Supp. 486, 489 (E.D.Pa. 1982), *aff'd*, 707 F.2d 1393 (3d Cir.1983), the mere existence of such evidence does not preclude summary judgment, *Kahn v. Pepsi Cola Bottling Group*, 547 F.Supp. 736, 739 (E.D.N.Y.1982). As the Second Circuit has noted, "[w]here, as here, the statistical evidence ... leads to an indisputable result, the judge is justified in taking the evaluation of the statistics away from the jury." *Geller v. Markham*, 635 F.2d 1027, 1034 (2d Cir.1980).

The statistical evidence in this case reveals that while 57% of the 33 non-union, non-professional employees laid off by Interfaith in 1983 were forty years of age or older, 58% of those retained were over forty. Likewise, while 66% of those laid off were black, 61% of those retained are black. Approximately 45% of those laid off were black females, with an equal percentage of black females retained.

■ Accordingly, plaintiff has simply failed to put forth any evidence which supports her claim that Interfaith's reduction in force had a disparate impact upon members of her class.[4] *See Geller*, 635 F.2d at 1032. Likewise, the record is devoid of evidence indicating that Interfaith acted with the discriminatory motive necessary to establish a claim of disparate treatment. *Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, n. 15, 52 L.Ed.2d 396 (1977)[5]. Indeed, the lack of proof or admission of intentional discrimination is dispositive of plaintiff's § 1982 claim. *Firefighters Local Union No. 1784 v. Stotts*, —— U.S. ——, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 383, 102 S.Ct. 3141, 3146, 73 L.Ed.2d 835 (1982).

In short, there simply is nothing in the record to indicate that either age, sex or race was a determinative factor in plaintiff's lay off. *Hagelthorn*, 710 F.2d at 86.[6]

As the Second Circuit recently has stated:

To allow a party to defeat a motion for summary judgment by offering purely

---

4. In addition to the statistics referred to above, plaintiff has submitted several pages of a computer printout which she allegedly received from the EEOC. *See* Plaintiff's Exhibit 5. Plaintiff claims that the data obtained from the EEOC differs from the statistics provided by defendant, thus, creating a question of fact. Plaintiff offers no explanation, however, as to what this raw data represents and/or how it contradicts defendant's statistics. Absent such analysis, plaintiff's data lacks real meaning and need not be considered on this motion. *Kahn v. Pepsi Cola Bottling Group*, 547 F.Supp. 736, 739 n. 1 (E.D.N.Y.1982).

In any event, defendant's statistics were set forth fully in its Statement of Material Facts Not In Dispute. Thus, these statistics are "deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Rule 3(g). Defendant's statistics are not controverted by plaintiff's Rule 3(g) statement; indeed, plaintiff's statement merely consists of five conclusions of law. Accordingly, defendant's statistics are deemed admitted.

5. Significantly, the Second Circuit recently has noted:

The summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation.

*Meiri v. Dacon*, 759 F.2d at 998.

6. Although plaintiff complains of inadequate discovery, plaintiff had ample opportunity to complete discovery before the May 18, 1984 cut-off date. Inasmuch as plaintiff makes no showing of good cause for her failure to complete discovery within the allotted time, her claim of inadequate discovery will not be considered on this motion. *Cf. Zahorik v. Cornell University*, 729 F.2d 85, 91 (2d Cir.1984).

conclusory allegations of discrimination absent any concrete particulars, would necessitate a trial in all Title VII cases. Given the ease with which these suits may be brought and the energy and expense required to defend such actions, we believe the trial judge properly [may grant] summary judgment.

*Meiri v. Dacon,* 759 F.2d at 998.

Accordingly, defendant's motion for summary judgment on plaintiff's ADEA, Title VII and § 1981 claims is granted.

### State Law Claims

Plaintiff asserts various state law claims in connection with her discharge, including breach of employment contract, breach of an implied covenant of good faith, fraud, detrimental reliance and tortious wrongful discharge. For the reasons set forth below, defendant is granted summary judgment on these claims.

■ Clearly, summary judgment must be granted as a matter of law on plaintiff's claims of breach of implied covenant of good faith and tortious wrongful discharge, since both theories of recovery specifically have been rejected by the New York Court of Appeals. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 297, 304–05, 461 N.Y.S.2d 232, 233, 237, 448 N.E.2d 86, 87, 91 (1983). *Cf. Boniuk v. New York Medical College,* 535 F.Supp. 1353, 1355 (S.D.N.Y.), *aff'd,* 714 F.2d 111 (2d Cir.1982).

Nor can plaintiff succeed on her claim of breach of employment contract. Plaintiff acknowledged at her deposition that she had no written employment contract, and that no one in a position of authority ever promised her anything regarding the length of her employment. Nonetheless, plaintiff contends that certain statements allegedly made by her supervisor, together with a December 16, 1982 newsletter distributed to employees, created a contract of employment. I am not persuaded.

■ The newsletter article, after acknowledging Interfaith's obligation to reduce the work-force, refers to a statement by the State Health Commissioner that "the *state* would attempt to provide every hospital worker who lost his/her job through the merger with the same level hospital job." Plaintiff's Ex. 4 (emphasis added). This statement, attributed to a state official, can hardly form the basis of a claim against Interfaith.

■ Thus, plaintiff's claim rests solely upon the statements attributed to her supervisor, Ms. Porter. Plaintiff alleges that Ms. Porter told the employees at a meeting held two or three days before plaintiff learned of her lay-off that their jobs would not be affected by the merger. Clearly, a question of fact exists as to whether this statement was made. Defendant argues, however, that assuming *arguendo* that the statement was made, it is nonetheless entitled to summary judgment. I agree.

As the New York Court of Appeals recently has stated:

[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

*Murphy v. American Home Products Corp.,* 58 N.Y.2d at 305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91.

Of course, an *express* limitation on an employer's right to discharge an at-will employee must be given effect. *See Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 460, 457 N.Y.S.2d 193, 194, 443 N.E.2d 441, 442 (1982). In *Weiner,* the Court of Appeals held that the plaintiff, although not employed for a fixed term, had pleaded a good cause of action for breach of employment contract where he was "discharged without the 'just and sufficient cause' or the rehabilitative efforts specified in the employer's personnel handbook and allegedly promised at the time he accepted the employment." *Id.* at 460, 457 N.Y.S.2d at 194, 443 N.E.2d at 442. The New York courts, however, have refused to extend the *Weiner* decision beyond the facts of that case. *See, e.g., O'Donnell v. Westchester Community Service Council, Inc.,* 96 A.D.2d 885, 466 N.Y.S.2d 41, 42 (2d Dep't 1983); *Utas v.*

*Power Authority of the State of New York*, 96 A.D.2d 940, 940–41, 466 N.Y.S.2d 390, 391 (2d Dep't 1983).

The *Weiner* case is clearly distinguishable from this case, since (a) plaintiff was not induced to take her job at Interfaith because of Porter's alleged representation, (b) the representation was not incorporated into an employment application, (c) plaintiff produces no support for her allegations that she rejected other offers of employment in reliance on the representation and (d) the representation was not contained in an employee handbook. *See Utas*, 96 A.D. at 940–41, 466 N.Y.S.2d at 381. Clearly, plaintiff cannot succeed on her breach of contract claim since there was no employment agreement to be breached. Accordingly, summary judgment is entered for the defendant.

Likewise, plaintiff has failed to demonstrate a question of fact as to the detrimental reliance necessary to form a claim of promissory estoppel. Plaintiff alleges that she continued to work at Interfaith and did not look for work elsewhere because she believed Porter when she said that plaintiff's employment at Interfaith was secure. Plaintiff provides absolutely no details to support her bald allegation that she relied to her detriment on Porter's statement allegedly uttered a mere two-three days before plaintiff was notified of her lay-off. To the contrary, plaintiff testified at a deposition that she did not turn down any job offers on the basis of Porter's statement, Deposition at 55, and that she does not know if she would have looked for other employment during the two-day period if the statement had not been made, *id.* at 51.

I am reminded of the Second Circuit's frequent admonition that "[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

Plaintiff offers no indication that evidence exists that would permit a reasonable inference that she detrimentally relied on Porter's statements. Accordingly, defendant is granted summary judgment on the claim of detrimental reliance.

Finally, the absence of evidence of detrimental reliance is also fatal to plaintiff's claim of fraud. *Galvez v. Local 804 Welfare Trust Fund*, 543 F.Supp. 316, 318 (E.D.N.Y.1982); *Cable v. Hechler*, 532 F.Supp. 239, 244 (E.D.N.Y.), *aff'd*, 685 F.2d 423 (2d Cir.1981).[7] Moreover, "an essential element of an action for fraud or deceit is a representation as to a past or present fact, not [as is the case here] as to what will be done in the future." *Galvez*, 543 F.Supp. at 318.

*Conclusion*

Defendant's motion for summary judgment on the Equal Pay Act claims is denied. In all other respects, defendant's motion for summary judgment is granted.

SO ORDERED.

---

7. Under New York law, the five elements of a fraud claim are misrepresentation, knowledge of falsity, intent to deceive, *reliance* and *damages. Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980); *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1230 (S.D.N.Y.1982).