Joseph M. TIGHE, Plaintiff,

v.

ALL BRAND IMPORTERS, INC. and
Guinness Import Company,
Defendants.

Civ. A. No. B-90-578 (WWE).

United States District Court,
D. Connecticut.

Dec. 4, 1992.

Kevin P. Clune, Norwalk, CT, for plaintiff.

Amy L. Starobin, Benjamin H. Green, Kelley Drye & Warren, Stamford, CT, Joseph M. Cohen, Baer, Marks & Upham, Herbert J. Levine, Orrick, Herrington & Sutcliffe, New York City, for defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Joseph Tighe brought this action against his former employer, All Brand Importers, Inc. ("ABI"), now Guinness Import Company ("GIC"), alleging the unlawful termination of his employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that plaintiff presents no genuine issue of material fact which would support his claim of discrimination. For the following reasons the motion for summary judgment will be granted.

## Facts

Plaintiff Joseph Tighe worked for defendant company for twelve years where he performed competently and reached the top sales position in the company, Vice President of Sales. Tighe was one of four vice presidents at ABI. In March 1990, defendant GIC acquired ABI in a stock purchase transaction. GIC had been looking for appropriate expansion possibilities and identified ABI as a target for acquisition because of the "synergies" which would result from the consolidation of the two beer import and marketing companies. The companies were similar in organizational structure, business operations, location, and number of employees. By the time of the acquisition, GIC had determined that the four functional areas of ABI—sales, marketing, finance and operations—would be absorbed into the corresponding areas of GIC, in order to maximize efficiency and decrease costs. As part of its cost reduction plan, GIC terminated many ABI employees, including all four of the ABI vice presidents. GIC chose to retain its own vice presidents to head each of the four functional areas. All four of the terminated ABI Vice Presidents were above age thirty-nine; and three were replaced by younger GIC employees.

The employment decisions regarding top level management were made by Michael Hughes, President and CEO of GIC. In the sales area, GIC and ABI each had some 45 employees who reported to a Vice President. However, GIC had a sales philosophy which focused on building demand for its upscale imported beer brands in order to increase long-term sales. This sales approach vested considerable discretion in individual sales managers. In contrast, ABI's sales force emphasized price discounts to increase sales over the short term, implemented by salespersons who were closely supervised in a centralized department. Hughes believed in the superiority of GIC's sales philosophy based on his own judgment and statistics from recent years: during 1989, sales at GIC had grown by some 12% while comparable sales for the entire industry had remained relatively flat, and sales at ABI had declined by 10%. William Olson, the incumbent sales

Vice President, had an outstanding record at GIC where he had worked since 1986 and had held the top sales position since June 1988. Hughes chose to retain Olson to head the GIC sales organization and terminate Tighe's employment. Olson was approximately thirty-three years old at the time of the acquisition and Tighe was fifty-three.

Several rumors circulated before the acquisition indicating that older ABI employees would be terminated. Hughes told Tighe that he envisioned a youthful and aggressive sales force for the new company. After the acquisition, the majority of the ABI sales employees were terminated. Although the nine salespersons who were offered employment by GIC were all in the unprotected age range of 25 to 39 years, sixteen employees in this same age range were terminated, as were twelve who were above age thirty-nine. Plaintiff relies upon these rumors and statistics regarding the sales staff to show that he was a victim of a discriminatory "youth movement."

## Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact, and it is clear that the moving party is entitled to judgment as a matter of law. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and ... it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323–4, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Although "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated ... [t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

In considering an ADEA claim the court follows the three-part *McDonnell Douglas* burden shifting analysis by which plaintiff first must establish a prima facie case of discrimination, in which case the bur-

den then shifts to the employer to articulate a legitimate, non-discriminatory reason for discharge. The plaintiff then has the burden to prove that the proffered reason is merely a pretext for discrimination. The plaintiff must first prove his prima facie case of discrimination by showing that: 1) he was in the protected age group of persons forty to seventy years old; 2) he was qualified to do his job; 3) he was discharged; and 4) the discharge occurred in circumstances which could give rise to an inference of age discrimination. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

 Tighe has offered a prima facie case sufficient to withstand summary judgment. He was fifty-three years old at the time he was terminated; he was qualified to perform the job of Vice President of Sales; and he was discharged and replaced with a younger employee in circumstances that could give rise to an inference of age discrimination.

 Because Tighe has stated a prima facie case of discrimination, defendant must articulate a legitimate reason for the termination. The employer's reason must be clear and specific. *Dister v. Continental Group Inc.*, 859 F.2d 1108, 1115 (2d Cir.1988). Reduction in force is a legitimate non-discriminatory reason for termination. However, "even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir.1992) (citation omitted). Defendant's proffered reasons for terminating Tighe are legitimate. In the context of the acquisition, with its resultant reduction in force, plaintiff lost his job to an executive of the purchasing company. Olson, the incumbent Vice President of Sales, had a documented record of outstanding performance. There was a change in philosophy of the sales department concomitant with the change in ownership, and Olson represented the new approach. Defendant's non-discriminatory reasons are documented by the record.

 Since defendant has articulated a legitimate nondiscriminatory reason for termination, Tighe must prove that the proffered reason for his discharge is pretextual. A plaintiff may meet this burden either directly, by proving that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Maresco*, 964 F.2d at 110. Plaintiff's burden in the context of corporate reorganization is made greater by the inevitable reduction in force. *Carlton v. Interfaith Medical Center*, 612 F.Supp. 118, 122 (E.D.N.Y.1985).

 After careful review, the court finds that plaintiff has failed to meet his burden of showing by either direct or circumstantial evidence that defendant's stated reasons for discharge were a pretext for age discrimination. Even resolving all ambiguities and inferences in favor of plaintiff, defendant is entitled to summary judgment as a matter of law.

 First, there is no allegation that plaintiff was more qualified for the Vice President position than the incumbent Vice President. In fact, the evidence shows that Olson was fully qualified to continue in his executive role in the restructured, and that there was no need for two executives in the sales department. A lack of significant discrepancy between the qualifications of two employees is not probative of age discrimination because it is a business decision to choose from among several qualified candidates. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *Donaldson v. Merrill Lynch & Co., Inc.*, 794 F.Supp. 498, 506 (S.D.N.Y.1992) (*citing E.E.O.C. v. Trans World Airlines, Inc.*, 544 F.Supp. 1187, 1220 (S.D.N.Y.1982)). The court will not evaluate business decisions or question a corporation's means to achieve a legitimate goal. *Dister*, 859 F.2d at 1116.

This case is similar to *Parcinski v. Outlet Co.*, 673 F.2d 34 (2d Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983), in which the Second Circuit reversed a jury verdict in favor of the employee, finding that the employer had eliminated the

need for plaintiff's job in an essential "belt-tightening" consolidation where plaintiff had never worked for the defendant-employer. The mere fact that plaintiff was replaced by a younger ABI employee does not show that GIC's proffered reason for termination is unworthy of credence. Only four vice presidents were needed after the acquisition. GIC was forced to choose between its own executives and those of ABI. GIC's decision to retain its own young vice president who had helped the company grow in recent years, instead of hiring the older vice president of ABI, where sales had recently declined, is not proof of discrimination. Rather, the evidence shows that GIC made a financially motivated business decision. Had there actually been a "youth movement," as plaintiff suggests, GIC would not have retained its Vice President of Finance, who was older than his counterpart at ABI.

Plaintiff's contention that the acquisition and post-acquisition organization plans were designed for discriminatory reasons is specious. It is not the function of the fact finder to second-guess legitimate business decisions. *Dister,* 859 F.2d at 1116. Plaintiff has presented no direct or circumstantial evidence to suggest that defendant's business decisions to acquire ABI outright or to cut costs and staff to increase efficiency violate the ADEA.

In addition, the alleged rumors of a "youth movement" are insufficient to support a claim of age discrimination. "[I]solated remarks have been rejected by courts as insufficient in establishing an inference of age discrimination" even when made directly to a claimant. *Graham v. Renbrook School,* 692 F.Supp. 102, 108 (D.Conn.1988) (citation omitted). Similarly, Hughes' statement regarding a "youthful and aggressive" sales force is not probative because it permits several different interpretations. When taken in the context of an acquisition and subsequent reorganization plan, this statement could apply to sales managers of any age, and is indicative of GIC's aim of implementing its own progressive sales approach in the reorganized company. Further, this statement about the sales force is insufficient to prove that a vice president was terminated because of his age, or that GIC's professed

reason for terminating Tighe and retaining Olson is unworthy of credence. Thus, the rumors and statements relied upon by plaintiff are legally inadequate to prove that defendant's cited reasons were a pretext for discrimination.

Finally, plaintiff's statistical information regarding sales personnel is not probative as to his age discrimination claim. Although it is proper for a plaintiff to rely on statistical evidence in proving pretext, the mere existence of such evidence does not preclude summary judgment. *Carlton,* 612 F.Supp. at 123. The fact that nine sales managers who were under age 39 were offered jobs in the restructured organization is insignificant in view of the fact that sixteen salespersons in the same age group were terminated. Moreover, statistics regarding the sales force are not probative of age discrimination regarding ABI's executives. These statistics do not directly support plaintiff's claim of age discrimination, nor do they indicate that GIC's stated reasons for its reorganization plans are unworthy of credence. GIC has articulated a sales approach different from ABI, which requires sales managers to be "total business specialists." Plaintiff has proffered insufficient evidence to show that this new sales approach and desire to cut costs and increase efficiency in the reorganized organization are a pretext for discrimination. Thus, the court finds that plaintiff has failed to prove that age was a factor in GIC's decision to discharge him or that defendant's proffered reason for termination is unworthy of credence.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment [39–1] is GRANTED.