104 F.3d 354
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Daniel REECE, Plaintiff-Appellant,
v.
NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Defendant-Appellee.
 No. 96-7291.
 United States Court of Appeals, Second Circuit.
 Nov. 12, 1996.
 
 Daniel Reece, Pro se, New York, N.Y. Rosalie J. Hronsky, Assistant Attorney General of the State of New York, New York, N.Y.
 Before FEINBERG, LEVAL and PAREKR, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 
 
 3
 Daniel Reece appeals from an order of the District Court granting summary judgment in favor of the defendant New York State Department of Taxation (the Department), on Reece's claim that his employment was terminated as a result of racial discrimination in violation of Title VII, 42 U.S.C.2000e et seq.
 
 
 4
 The Department hired Daniel Reece as a Taxpayer Service Representative on August 28, 1989. Under civil service regulations, Reece was required to serve a one-year probationary period, during which his employment could be terminated for unsatisfactory service at any time after the completion of eight weeks and before the completion of the one-year period.
 
 
 5
 Reece received quarterly evaluation reports from the Department during the period of his employment. Each report evaluated Reece's performance in eight categories: management of work assignments, quality of work, productivity, relationships, personal work characteristics, attendance, problem solving/decision making, and communications. In addition, he was given an overall evaluation rating. There were four possible ratings for both specific categories and the overall evaluation of performance: exceeds expectations, meets expectations, needs improvement, or unsatisfactory. Each quarterly evaluation was prepared by Reece's immediate supervisor and reviwed by an office manager. A copy of each evaluation was given to Reece.
 
 
 6
 Reece's first quarterly evaluation, for the period ending November 6, 1989, gave him an overall rating of "needs improvement." Reece received a "needs improvement" rating for three of the eight evaluation categories: management of work assignments, productivity, and problem solving/decision making. His rating for attendance was "unsatisfactory." The remaining four categories were rated "meets expectations."
 
 
 7
 Reece's second quarterly evaluation, for the period ending February 5, 1990, was similar. His overall rating was "needs improvement." For the categories of management of work assignments, productivity, personal work characteristics, and problem solving/decision making, Reece received a rating of "needs improvement." His attendance was again rated as "unsatisfactory." The remaining three categories were rated "meets expectations."
 
 
 8
 Reece's third quarterly evaluation, for the period ending May 7, 1990, gave him an overall rating of "needs improvement." He received a "meets expectations" rating in the categories for relationships and communications. The remaining six categories were evaluated as "needs improvement."
 
 
 9
 Reece's final quarterly evaluation, for the period ending August 6, 1990, evaluated his overall performance as "unsatisfactory." He was rated as "unsatisfactory" in four categories: management of work assignments, quality of work, productivity, and problem solving/decision making. He received a "needs improvement" rating in the categories of personal work characteristics and attendance. His relationships and communications were rated as "meets expectations."
 
 
 10
 On at least seven occasions during the period of Reece's probationary employment, he received written counselling memoranda about attendance problems. Two of those memoranda advised Reece that a continued record of poor attendance would result in disciplinary action. On June 13, 1990, Reece was given an additional counselling memorandum, warning of his continued poor attendance as well as the poor quality of his work. Finally, in a letter dated July 31, 1990, Reece was informed that his service as a Tax Compliance Representative would terminate at the close of business August 14, 1990, as a result of unsatisfactory employment performance.
 
 
 11
 Reece, an African-American, then filed charges with the Equal Employment Opportunity Commission, alleging that his termination by the Department of Taxation was racially motived. In January 1992, the EEOC dismissed the charges against the Department on its finding that the evidence offered did not establish a violation of Title VII. Reece then filed a complaint in the District Court for the Southern District of New York, alleging a Title VII violation. At the conclusion of discovery, the Department moved for summary judgment. It submitted Reece's quarterly evaluation reports, the counselling memoranda detailing his poor attendance and productivity problems, and an affidavit from Reece's supervisor in support of its motion.
 
 
 12
 In response, Reece submitted an affirmation contesting the Department's motion for summary judgment and detailing his claim that his termination was racially motivated. According to Reece, he had met with his supervisor prior to termination and been told that he far surpassed all other staff members in an extremely critical area. Reece alleged that the supervisor informed him that Reece was being terminated because "somebody just doesn't want you here." In addition, Reece claimed that he was not unsatisfactory for a new employee because he met the employer's expectations in the four of eight categories in his first two evaluation reports. Reece alleged that his attendance problems had improved in the later period of his employment, and that a supervisor had informed him that his quarterly evaluations would also improve, due to the quality and volume of his work.
 
 
 13
 The district court granted the Department's motion for summary judgment on January 16, 1996. Reece, appearing pro se and in forma pauperis, appealed to this court.
 
 
 14
 The district court correctly held that Reece had failed to establish a prima facie case of employment discrimination under Title VII. In order to establish a prima facie case, a plaintiff must show that (1) he was a member of a protected class; (2) his job performance was satisfactory; (3) there was an adverse employment decision; and (4) this occurred under circumstances suggesting discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 98 S.Ct. 1817, 1824 (1973). The issue of whether an employee's performance is satisfactory focuses on an employer's legitimate expectations; supervisors' reviews are relevant to this inquiry. Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829, 106 S.Ct. 91 (1985).
 
 
 15
 Reece has failed to show that his performance was satisfactory. The material submitted by the Department shows that, at all times during his employment, Reece's performance was evaluated as below his employer's expectations. Furthermore, his quarterly evaluations grew progressively worse over time. Reece has made conclusory statements that his performance was comparable or superior to that of other employees. However, he offers no facts in support of his argument. Conjecture and conclusory assertions are insufficient to defeat a motion for summary judgment. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d. Cir.1995).
 
 
 16
 Furthermore, Reece has demonstrated no evidence that his termination was racially motivated. Assuming, arguendo, that Reece had established a prima facie case under Title VII, the burden then would have shifted to the Department to articulate a legitimate, nondiscriminatory reason for Reece's discharge. See Bd. of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, 99 S.Ct. 295, 295 (1978) (per curiam). In meeting this burden, the Department need not persuade the court that it was actually motivated by the stated reasons. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1983) (footnotes omitted). As noted above, the Department has offered extensive documentation suggesting that Reece was fired for his poor performance. Departmental records of Reece's poor evaluations and continued warnings of attendance and work quality problems demonstrate a legitimate basis for Reece's termination.
 
 
 17
 Once the Department has met its burden of production by demonstrating nondiscriminatory reasons for Reece's termination, Reece must demonstrate both that the articulated reasons are untrue and that intentional discrimination was the real reason for his termination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 2747-48 (1993).
 
 
 18
 Reece has failed to offer any evidence demonstrating that his termination was motivated by intentional racial discrimination. At most, the alleged statement by Reece's supervisor that "somebody just doesn't want you here" demonstrates personal conflict. Friction between an employee and a supervisor constitutes a legitimate, nondiscriminatory basis for discharge. Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir.1986). Reece has offered no facts that would support an inference of racial, rather than personal, animus. Summary judgment was therefore appropriate.
 
 
 19
 The decision of the district court is AFFIRMED.