Om CHOJAR, Plaintiff,

v.

Judith LEVITT, City Personnel
Director, Defendant.

No. 90 Civ. 3402 (RWS).

United States District Court,
S.D. New York.

Sept. 25, 1991.

Om Chojar, pro se.

Victor A. Kovner, Corp. Counsel of City of New York, New York City, for defendant; Bonnie Mussman, Asst. Corp. Counsel, of counsel.

## OPINION

SWEET, District Judge.

Defendant Judith Levitt ("Levitt" or the "Department") has moved pursuant to Rule 12(c), Fed.R.Civ.P. for judgment on the pleadings, or in the alternative, under Rule 56, Fed.R.Civ.P. for summary judgment dismissing plaintiff Om Chojar's ("Chojar") employment discrimination action. For the reasons set forth below, the motion is granted in part and denied in part.

### The Parties

Levitt is the Personnel Director of the Department of Personnel (the "Department") of the City of New York (the "City") and is an employer · within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Chojar was employed as a computer programmer analyst in the Electronic Data Processing Unit ("EDP") of the Department, pursuant to a civil service list appointment. EDP was later combined with another Department unit, to form the Management Information Systems ("EDP/MIS"). Judith Meyer ("Meyer") was the supervisor of EDP/MIS.

### Prior Proceedings

On May 18, 1990, Chojar filed his complaint in this action pursuant to Title VII, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), alleging that the Department failed to employ him, failed to promote him, terminated his employment, subjected him to harassment and recurring losses, and that such actions were discriminatory because they were based on Chojar's race, color, gender, religion, national origin and age.

The filing of the complaint follows a Determination and Order After Investigation of September 30, 1988 by the New York State Division of Human Rights ("SDHR") of no probable cause. On December 8, 1988, following SDHR's findings, Chojar requested the Equal Employment Opportunity Commission ("EEOC") to review SDHR's finding of no probable cause. EEOC notified Chojar by Determination of February 7, 1990 that it had reviewed the determination of SDHR, and concluded that the evidence obtained during the investigation had not established violations of the statutes.

On March 19, 1991, the Department filed the instant motions. After a series of adjournments to the return date of the motion, the motion was considered fully submitted as of June 27, 1991.

### The Facts

Chojar is a male of Indian national origin. On November 16, 1981, Chojar was appointed pursuant to a civil service list to the Department. He was assigned to the EDP unit, later known as EDP/MIS, where he remained until his termination in February, 1988.

The general responsibilities of a computer programmer analyst include writing computer programs, interpreting computer specifications, and the maintenance of computer programs. Meyer was the unit supervisor of EDP/MIS, and Edward Graulich ("Graulich") was Chojar's immediate supervisor.

During his employment at EDP/MIS, Chojar received three evaluations. For the probationary period 1981–1982 Chojar received a performance rating of satisfactory. For the period 1983–1984, Graulich rated Chojar's overall performance as "good." For the period 1985–1986, Chojar received an overall performance rating of unsatisfactory. Meyer, rather than Graulich, conducted the 1985–1986 evaluation. Meyer noted on the evaluation form that Chojar required additional supervision, worked at a slow pace, was not very productive at the programmer analyst level, and had difficulty in working with other programmers, making it difficult to assign him to projects which required him to work with the rest of the staff. The evaluation further noted:

> There have been a few disagreements between members of the staff and [Chojar]. It was difficult to determine which party was wrong, but it has made it difficult assigning [Chojar] to projects

where he must work with the rest of the staff.

Chojar has appealed this 1985–1986 evaluation to the Performance Rating Board (the "Board") pursuant to New York Civil Service Law (the "Civil Service Law") Rules and Regulations § 35.6(b)(2) (McKinney's 1983). That appeal is currently pending.

In January 1987, Chojar was involved in a series of incidents with other EDP/MIS employees in which Chojar called upon Graulich to investigate his complaints of loud conversations carried on by co-workers. In memoranda of January 13 and January 20, 1987, Graulich noted these requests and stated his conclusion that he observed Chojar's complaints to be unfounded.

On February 24, 1987, Meyer, in a memorandum to Lee Burkholtz ("Burkholtz"), the deputy director of the Department, inquired about the procedures to be followed in order to terminate Chojar for incompetence.

On March 18, 1987, Meyer requested Chojar to attend a conference to discuss his work productivity. Chojar responded that he was too busy. When Chojar was asked to attend a rescheduled conference on the same date with Meyer and Fred D'Alo ("D'Alo"), project manager at EDP/MIS, Chojar attended the conference, but refused to discuss the work productivity issue without Graulich's presence.

On April 9, 1987, Chojar was involved in a verbal dispute with co-worker Regina Rabinar ("Rabinar"). That same day co-workers Ahmed Nouri ("Nouri") and Feradoon Majidi ("Majidi") approached Chojar at his desk. A physical confrontation between Chojar and Nouri and Majidi ensued. Chojar reported the incident to the Inspector General's Office of the Department ("IG"), and at the advice of the IG, Chojar reported the incident to the police, and eventually sought criminal summonses against Nouri and Majidi.

On April 9, 1987 and again on April 14, 1987, Meyer asked Chojar to move to another work location. Chojar requested that the order be put in writing. On April 21, 1987 Meyer requested in writing that Chojar move to another work location.

On April 22, 1987 a criminal court mediator conducted a hearing on the April 9 incident, and advised the three parties to the incident to avoid confrontations with each other in the future.

On April 24, 1987, Chojar was served with a notice of Involuntary Leave of Absence and Medical Examination pursuant to § 72 of the Civil Service Law and was put on involuntary leave of absence. In addition, Chojar was ordered to attend a psychiatric examination, also pursuant to § 72, on two occasions.

Chojar did not attend either of the scheduled psychiatric examinations on his attorney's advice that he not submit to examination without his attorney present.

On June 3, 1987, the charges against Chojar were amended to include additional specifications of misconduct due to Chojar's failure to attend the examinations. In the letter accompanying the amended charges, Levitt informed Chojar that he was being suspended without pay as of that date and that an informal conference would be scheduled for June 11, 1987.

Following the conference, Chojar received a letter of July 2, 1987 informing him that he was recommenced for dismissal from his position with the Department.

Pursuant to §§ 72 and 75 of the Civil Service Law, a due process hearing before an Administrative Law Judge ("ALJ") employed by the New York City Office of Administrative Trials and Hearings was scheduled. By pretrial order of August 17, 1987, ALJ Raymond Kramer ("Kramer") recommended dismissal of the charges relating to Chojar's failure to appear at the two scheduled psychiatric examinations. The ALJ based his ruling on the grounds that Chojar should have been advised of his right to tape the psychiatric examination for consultation with his attorney.

During the hearing, which took place on August 17–20, 1987, the ALJ heard testimony from several witnesses, including Graulich. Graulich testified under oath

that Chojar was incompetent in the performance of his duties, was a disruptive influence in the office, and could not work together with other employees in the EDP/MIS unit.

At the conclusion of the hearing, the ALJ found Chojar guilty of misconduct and incompetence pursuant to § 75 of the Civil Service Law and recommended that Chojar be terminated from his position and dismissed from the civil service.

By letter of February 22, 1988, the Department informed Chojar that it was adopting the findings and recommendation of the ALJ in their entirety. The Department stated that it was dismissing the § 72 proceedings but that it found Chojar guilty of misconduct and incompetence pursuant to § 75 of the Civil Service Law and therefore directed that Chojar be terminated from his position and dismissed from the civil service effective immediately.

On or about the date of Chojar's termination, of the other 25 persons employed in EDP/MIS, 10 were black, 12 were female, and eight different national origins were represented.

The Department did not fill the position from which Chojar was terminated.

Following his termination, Chojar filed a complaint with the SDHR, in which he authorized the SDHR to accept the complaint on behalf of the EEOC. In the SDHR complaint, Chojar charged that beginning in 1986, the Department violated the Executive Law of New York States and Title VII by discriminating against him on the basis of race, color, sex, national origin and by discharging him in retaliation for his reporting the alleged April 9, 1987 assault to the IG and for serving criminal summonses upon his co-workers.

In a Determination and Order After Investigation of September 30, 1988, SDHR made a finding of no probable cause.

On December 8, 1988, Chojar asked the EEOC to review SDHR's determination of no probable cause. In a Determination of February 7, 1990, the EEOC notified Chojar of its finding that the evidence obtained during the investigation had not estab- lished violations of the statutes, and notified Chojar of his right to sue within 90 days of his receipt of the Determination.

By Notice of Personnel Director Action of May 20, 1988, Chojar was notified that he had been found "not qualified" for appointment from an eligible list for DOP Exam No. 4027.

On May 18, 1990, Chojar filed the instant complaint, in which he alleges, in addition to the claims of discriminatory termination and retaliatory discharge alleged in the SDHR and EEOC complaints, the Department's failure to employ him, its failure to promote him, continuous harassment and recurring losses. Chojar in the instant complaint further alleges that the Department's conduct was discriminatory with respect to his race, color, gender, religion, national origin, and age.

*Discussion*

I. The Summary Judgment Standard

Rule 12(c), Fed.R.Civ.P., provides:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56....

The materials submitted in addition to the pleadings thus require treating the instant motion as one for summary judgment. Under Rule 56, a motion for summary judgment shall be granted when the moving party demonstrates as a matter of law that he is entitled to that remedy because there are no genuine issues of material fact present in the action. *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989). The moving party, however, has the burden of demonstrating the absence of any genuine issue as to all the material facts, and the nonmoving party is entitled to all favorable inferences that may be drawn from the evidence. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980).

On a motion for summary judgment, then, the plaintiff must show a dispute about the "facts that might affect the out-

come of the suit under governing law ..." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *motion denied,* 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). In addition, the dispute about the facts must also be genuine, *i.e.,* "a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

In the context of a Title VII action, a plaintiff opposing a summary judgment motion carries a burden similar to his burden at trial: he must first establish a *prima facie* case of employment discrimination; the burden then shifts to the employer to rebut the presumption established by the *prima facie* case by articulating a legitimate, non-discriminatory reason. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.1985). Once the employer articulates the legitimate non-discriminatory reasons for the employment action, the employee has the burden to demonstrate that the stated reasons were merely pretextual. *Burdine,* 450 U.S. at 256–57, 101 S.Ct. at 1095–96.

The Court of Appeals for the Second Circuit has recognized that summary judgment is appropriate in some employment discrimination cases, even though intent is an element of such case. *Meiri,* 759 F.2d at 998. In order to oppose successfully a summary judgment motion, the employee opposing the motion must set forth facts, which, if proved at trial, could establish that the employer's non-discriminatory reasons were pretextual. *Id.* Moreover, conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e). *Id.*

Chojar claims that the Department discriminated against him by its failure to hire him, failure to promote him, continuous harassment, recurring loss, discriminatory termination, and retaliatory discharge. Chojar alleges that the Department's conduct was discriminatory with respect to his race, color, gender, religion, national origin, and age. As a threshold issue, however, the court must consider whether it has subject matter jurisdiction over all the claims.

## II. The Court Lacks Subject Matter Jurisdiction over the Claims of Age and Religious Discrimination

Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII. 42 U.S.C. § 2000e–5(e); *McDonnell Douglas,* 411 U.S. at 798, 93 S.Ct. at 1822. Judicial relief cannot be sought for claims not listed in the original EEOC charge unless they are "reasonably related" to the charge. *Stewart v. United States Immigration & Naturalization Serv.,* 762 F.2d 193, 197–98 (2d Cir.1985).

In the instant case, Chojar's charge of discrimination filed with SDHR and EEOC checked the boxes designated "sex," "race," "color," and "national origin" to indicate the type of discrimination alleged. In his specification of the particulars of his claim, he alleged that he was employed by the Department since 1981 as a computer programmer analyst, and that his work performance was satisfactory. He charged that since 1986, the director of his unit wanted to take his civil service title away. He alleged further that she connived with her friends to harass him, and that an assault on him occurred on April 24, 1987, which he reported to the IG and to the police. Chojar further alleged that because of his actions, retaliation followed, causing him to be put on involuntary leave on April 24, 1987, which became a suspension without pay as of June 7, 1987. He alleged that he was accused of incompetence and misconduct, and he was ordered to seek a psychiatric evaluation. As a result of this action, Chojar alleged, a recommendation for his termination was made. Chojar further alleged that his alleged attackers and harassers, all white, had not been subjected to similar treatment. The SDHR complaint concluded by stating, "I charge the above named respondent with unlawfully discriminating against me by denying me equal terms, conditions and privileges of employment and terminating me because of my

race and color, sex, national origin, and in retaliation, in violation of the Human Rights Law of the State of New York."

### A. *Religious Discrimination*

██ Courts have held that the proper scope of any private lawsuit resulting from an EEOC charge encompasses not only the claims presented in the charge, but also those that reasonably could be expected to grow out of the charge. *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978). Moreover, courts generally do not hold Title VII plaintiffs to rigorous requirements of specificity in naming the form of discrimination allegedly suffered. *Drummer v. DCI Contracting Corp.,* 772 F.Supp. 821, 825 (as amended) (S.D.N.Y.1991) (citations omitted). Nonetheless, where, as here, the alleged retaliatory termination based on race and national origin form the gravamen of Chojar's EEOC charge, Chojar has not alleged facts sufficient to put the EEOC on notice of his religious discrimination claim so as to "trigger the investigatory and conciliatory procedures of the EEOC," the exercise of which underlies the requirement that plaintiffs exhaust their EEOC remedies before pursuing a judicial remedy for a Title VII claim. *Miller v. Smith,* 584 F.Supp. 149, 154 (D.D.C.1984).

Courts in this Circuit have found a lack of subject matter jurisdiction of added claims where such additional claims could not reasonably be expected to grow out of the original charges before the EEOC. In *Waterman v. New York Telephone Co.,* 36 FEP Cases 41, 1984 WL 1482 (S.D.N.Y.1984), the plaintiff checked the box designated "sex" in her SDHR and EEOC charges, and subsequently brought a Title VII action alleging both sex and race discrimination. The court held that it lacked subject matter jurisdiction over the race discrimination claim because plaintiff had not exhausted her administrative remedies with respect to the race claim. *See also Drummer,* 772 F.Supp. at 826 (under "relation back" standard applied to untimely amendments to a complaint, claim of religious discrimination does not "relate back" to sex discrimination charge filed before EEOC). Therefore, as the court lacks subject matter jurisdiction with respect to the religious discrimination claim, the motion for summary judgment dismissing this claim is granted.

### B. *Age Discrimination*

██ ADEA provides that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission ...

29 U.S.C. § 626(d). The Court of Appeals for the Second Circuit has interpreted this provision to require plaintiff who wishes to bring a discrimination claim under ADEA first to file charges with the EEOC, or in the case of a New York plaintiff, with SDHR. *Promisel v. First American Artificial Flowers,* 943 F.2d 251, 256 (2d Cir. 1991). It is undisputed that Chojar did not file an age discrimination claim with the EEOC or the SDHR. Nor for the reasons set forth above, can such claim be said to "reasonably relate" to the claims charged in those complaints. Therefore, the court lack subject matter jurisdiction of the age discrimination claim.

### III. Chojar Has Failed to Establish a Prima Facie Case with Respect to the Failure to Hire and Failure to Promote Claims

### A. *Failure to Hire*

██ In support of his failure to hire claim, Chojar stated at his deposition that he was the subject of discrimination in hiring because "I am no longer working for them, and they are supposed to keep me on work; that is what it means." Chojar Deposition at 75. It is undisputed that the Department at one time employed Chojar.

In *McDonnell Douglas,* the Supreme Court held that a plaintiff alleging discrimination in hiring could establish a *prima facie* case by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained

open and the employer continued to seek applicants from persons of complainant qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. As stated above, it is undisputed that Chojar was hired by the Department and was employed there from 1981 until 1988. Therefore, he cannot allege his rejection, the third element required to establish a *prima facie* case. Such failure to establish a *prima facie* case with respect to the failure to hire claim requires summary judgment dismissing this claim.

## B. *Failure to Promote*

■ The test for determining whether plaintiff has established a *prima facie* case of failure to promote for discriminatory reasons is the same as the *McDonnell Douglas* test for failure to hire: the plaintiff must belong to a protected class; be rejected for a position for which he has applied and was qualified; and the position must remain open while the employer continued to seek applicants from persons of the plaintiff's qualifications. *Hudson v. Int'l Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir.1980).

Chojar testified at his deposition that he applied at least two times for the promotional position of computer associate between 1985 and 1987. A letter of June 27, 1986 written by Chojar to the Board, submitted by Chojar as Exhibit 4 to his opposing papers, also alludes to two occasions on which he sought promotion. However, Chojar has adduced no documentary evidence of either the alleged application or the alleged rejections that would establish that the alleged incidents ever took place. Therefore, summary judgment dismissing the failure to promote claim is granted, Chojar having failed to set forth a *prima facie* case for failure to promote. *See Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir.1978) (plaintiff's reliance on allegations in complaint and statements in affidavit insufficient to preclude grant of summary judgment motion in discrimination case).

## IV. Continuous Harassment and Recurring Losses

By way of continuous harassment and recurring losses, Chojar alleges that he was not restored to the pay roll during the period when he was suspended pending the outcome of the ALJ hearing, that the Department withheld back pay from him, that he was wrongfully denied City jobs after his termination by the Department, and that he was wrongfully deprived of his pension rights.

### A. *Suspension Without Pay/Deprivation of Back Pay and Pension*

■ To the extent that Chojar alleges that he was treated differently from other employees because of his race, color, gender and national origin with regard to his alleged suspension without pay and alleged right to receive back pay and pension benefits, these claims "reasonably relate" to the charges of discrimination and retaliatory discharge brought before the EEOC, and therefore the court has subject matter jurisdiction.

Section 75(3) of the Civil Service Law provides that "[p]ending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days." Civil Service Law § 75(3) (McKinney's 1991). Courts have interpreted this section to mean that even if the employee is ultimately found guilty of the charges against him and dismissed, he will nonetheless be entitled to full pay for any period of suspension in excess of 30 days. *Baker v. Cawley*, 459 F.Supp. 1301 (S.D.N.Y.1978) (applying § 75 of Civil Service Law).

■ Chojar received his notice of suspension on June 3, 1987. The date of the ALJ hearing pursuant to § 75 of the Civil Service Law was August 17, 18 and 20, 1987. By report and recommendation dated September 30, 1987 the ALJ recommended Chojar's dismissal. Chojar was notified of his dismissal by letter of February 22, 1988. The Department has submitted no evidence as to the relevant period for these alleged entitlements, whether Chojar re-

ceived such benefits, or, alternatively, that he was not entitled to any additional payments. Therefore, the Department has failed to carry its burden, and a material issue of fact exists relating to the entitlement and/or receipt of the claimed payments, precluding summary judgment on these claims.

### B. *Wrongful Denial of Other City Jobs*

Section 50(4)(e) of the Civil Service Law states:

> Disqualification of applicants or eligibles. The state civil service department and municipal commissions may refuse to examine an applicant, or after examination to certify an eligible who has been dismissed from a permanent position in the public service upon stated written charges of incompetency or misconduct, after an opportunity to answer such charges in writing, or who has resigned from, or whose service has otherwise been terminated in, a permanent or temporary position in the public service, where it is found after appropriate investigation or inquiry that such resignation or termination resulted from his incompetency or misconduct.

It is undisputed that Chojar was terminated after a hearing at which it was concluded that he was guilty of incompetence and misconduct. Therefore, summary judgment dismissing this claim must be granted.

### V. Discriminatory Termination

■ To establish a *prima facie* case of termination based on discrimination, a plaintiff must show:

> (i) that he belonged to a protected class, (ii) that his job performance was unsatisfactory; (iii) that he was discharged and (iv) that, after [he] was discharged, the position remained open and the employer continued to seek applicants from person's of complainant's qualifications.

*Meiri,* 759 F.2d at 995. While the failure to replace a terminated employee is not fatal to a plaintiff's *prima facie* case, the absence of a replacement for the terminated employee substantially weakens the plaintiff's *prima facie* case. *Id.* (evidence

that plaintiff never replaced may weaken, but certainly does not eliminate, inference of discrimination).

■ Instead of making a showing of this fourth element, however, a plaintiff can also satisfy the elements of a *prima facie* case by showing that the same acts would not have occurred had the employee been of a different class. *Wade v. New York Telephone Co.,* 500 F.Supp. 1170, 1176 (S.D.N.Y.1980). Chojar alleges in his complaint that the white co-workers with whom the disputes occurred were not subject to disciplinary action. However, in a discriminatory termination claim, the relevant question rather is whether, for example, whites who were the subject of a disciplinary proceeding resulting in a recommendation of termination were not dismissed as a result of such recommendation. Chojar makes no such showing. Therefore, as Chojar has failed to satisfy the elements of a *prima facie* case of discriminatory termination, his discriminatory discharge claim must be dismissed as a matter of law.

Assuming *arguendo,* however, that the evidence submitted by Chojar is sufficient to constitute a *prima facie* showing of discriminatory discharge, the burden shifts to the employer to "articulate some legitimate, non discriminatory reason for the employee's rejection ..." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The employer's burden in this phase is satisfied if he "simply explains what he has done or produces evidence of legitimate non-discriminatory reasons." *Board of Trustees v. Sweeney,* 439 U.S. 24, 25 & n. 2, 99 S.Ct. 295, 296 & n. 2, 58 L.Ed.2d 216 (1978). Placing this burden on the employer serves a dual purpose: first, it permits the employer to rebut the inference of discrimination that arises from proof of the *prima facie* case; second, the burden of production frames the factual issue with sufficient clarity to afford the employee a full and fair opportunity to demonstrate pretext. *Meiri,* 759 F.2d at 996.

■ Here, the Department has produced evidence of testimony at the hearing, as well as of the ALJ's findings as a result of.

such hearing, that Chojar was difficult to work with and that he had difficulty performing tasks in the expected time. For example, Graulich testified under oath that Chojar was incompetent in the performance of his duties, was a disruptive influence in the office, and could not work together with other employees in the EDP/MIS unit. While Chojar makes allegations of Meyer's bias, no where does he show, let alone allege, that Graulich's testimony was in any way lacking in credibility. The Department has therefore established a legitimate, non-discriminatory reason for Chojar's discharge.

■ When the employer has established a legitimate non-discriminatory reason for the employee's discharge, the burden shifts to the employee to prove the existence of factual issues demonstrating the stated reasons were merely a pretext. *Burdine,* 450 U.S. at 256–57, 101 S.Ct. at 1095–96; *Meiri,* 759 F.2d at 997. Where, as here, Chojar has failed to point to any evidence suggesting that other employees who were considered incompetent, insubordinate or to have difficulty in getting along with co-workers were treated differently, Chojar has failed to carry his burden, and summary judgment is required as a matter of law. *See Meiri,* 759 F.2d at 997 (inability to get along with co-workers constitutes a legitimate, non-discriminatory reason for an employment decision where plaintiff offers no evidence that employer's treatment of her differed from that accorded other employees or that employer departed from its general policies in discharging her).

In sum, absent any evidence that the Department treated differently other employers against whom a termination recommendation was received after a § 75 hearing, Chojar's allegations at best amount to nothing more than discharge without adequate cause. Even assuming the establishment of facts supporting discharge without adequate cause, such facts do not raise an issue of impermissible discrimination required under Title VII. *Wade,* 500 F.Supp. at 1176. Therefore, for the reasons set forth above, the summary judgment motion

requesting dismissal of the termination claim is granted.

## VI. Retaliatory Discharge

■ In order to establish a *prima facie* case of retaliation, a plaintiff must allege (1) that he has engaged in protected activities and that defendant knew of these activities; (2) that plaintiff suffered some disadvantageous employment action; and (3) that there is a causal connection between the first two elements such that a retaliatory motive played a part in the adverse employment action. *See Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38, 44 (2d Cir.1984).

■ Applying the above standards about burden of proof and summary judgment to Chojar's retaliatory termination claim requires the same result as with the termination claim, for reasons similar to those set forth above. In support of his contention that the disciplinary hearing, and its outcome, arose in retaliation for his filing a complaint about the alleged assault on Chojar by fellow employees with the IG and the Police, Chojar cites the temporal proximity of Chojar's filing of the IG complaint, April 9, 1987, to his being served with charges and specifications pursuant to § 72 of the New York Civil Service Law on April 24, 1987 and his placement on involuntary leave of absence as of that date.

Assuming that Chojar has set forth evidence sufficient to constitute a *prima facie* case of retaliatory discharge, the Department sets forth several facts supporting its position that it had a legitimate, non-discriminatory ground for the actions alleged to constitute retaliation. First, as set forth in the Department's statement of material facts pursuant to Local Rule 3(g)—and Chojar does not dispute this statement—it was the IG's investigation of the April 9 incident which ultimately resulted in the serving of Chojar with charges and specifications. Thus, the Department did not cause the allegedly retaliatory action; rather, it was Chojar who initiated the action by bringing his complaint to the IG.

Moreover, even assuming the Department indirectly caused the issue of charges

and specifications, a letter of Meyer to Burkholtz of February 24, 1987 inquiring about the procedures to be followed in order to terminate Chojar for incompetence demonstrates that the Department was considering termination well before the April 9, 1987 incident. Finally, the ALJ's Report and Recommendation submitted by the Department in support of the instant motion as Exhibit U states that the April 7 incident was not among the charges that were the subject of the hearing. ALJ Report and Recommendation n. 5. The Department therefore has adduced evidence showing that Chojar's filing of the IG complaint was not the cause of his termination therefore carrying its burden.

Chojar may satisfy his ultimate burden "either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Chojar has failed to set forth any evidence contradicting the testimony and documents of Graulich and others and showing that his performance in the period immediately leading up to his involuntary suspension was adequate. Chojar, moreover, cannot refute the presumption established by the Department that the discharge occurred for a legitimate, nondiscriminatory reason by merely pointing to the inference of causality resulting from the sequence in time of the events in the face of such evidence. *Meiri*, 759 F.2d at 998 (conclusory allegations of discrimination insufficient to satisfy requirements of Rule 56(e)). Chojar's failure to carry his burden therefore requires summary judgment dismissing his retaliation claim.

*Conclusion*

For the reasons set forth above, the Department's motion is granted in part and denied in part. The claims based on age and religious discrimination are dismissed, as are the failure to hire, failure to promote, discriminatory termination and retaliatory discharge claims. The existence of material issues of fact preclude summary judgment of the claims for continuous harassment and recurring loss based on Chojar's alleged suspension without pay, deprivation of back pay, and entitlement to pension benefits.

It is so ordered.