Michelle SPILLANE, Plaintiff,

v.

William HENDERSON, United States Postmaster General, Defendant.

No. CV 98–7784.

United States District Court, E.D. New York.

Jan. 29, 2001.

224

Law Offices of Kenneth W. Richardson by Kenneth W. Richardson, New York City, for plaintiff.

Loretta E. Lynch, United States Attorney by Gail A. Matthews, Assistant U.S. Attorney, Central Islip, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a case commenced by an employee of the federal government alleging retaliatory employment discrimination in violation of Title VII of the Civil Rights laws. *See* 42 U.S.C. § 2000e–16 (making Title VII applicable to federal employees); 42 U.S.C. § 2000e–3(a) (prohibiting retaliation) (collectively "Title VII").

Presently before the court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. *Factual Background*

The deposition testimony and other uncontroverted documents submitted in support of and in opposition to the motion reveal the following facts.

#### A. *Plaintiff's Employment Record*

Plaintiff was first employed by the postal service in its Ronkonkoma, New York office in February of 1985. The Ronkonkoma office has a main office located on Hawkins Avenue and a small branch office on Portion Road. From 1988 through 1992 Plaintiff worked in the main office. In June of 1992, Plaintiff was transferred to the branch office where she served as a distribution clerk.

Plaintiff's full employment record is before the court. That record reveals an number of disciplinary actions taken against Plaintiff between 1993 and 1995 for violations of postal service regulations. On several occasions beginning in 1993, Plaintiff's cash drawer revealed significant shortages. Specifically, in June of 1993, Plaintiff's cash drawer was short over $300; in August of 1993, it was short over $1,400. Audits of Plaintiff's cash drawer also revealed shortages in March of 1994, November of 1994, February of 1995 and June of 1995.

Other infractions noted in Plaintiff's employment record include violations of Postal Service security procedures when Plain-

tiff left her keys in an unattended cash drawer in December of 1994 and June of 1995. Plaintiff was also noted to have left unsecured checks and money orders at her desk in March of 1995.

Plaintiff's various misdeed led the Postal Service to take disciplinary action in 1994 and 1995. In April of 1994 the Postal Service informed Plaintiff of its intent to collect approximately $200 as reimbursement for shortages identified in Plaintiff's account. Plaintiff grieved this action with her union. In May of 1994, Plaintiff entered into an agreement which required her to pay the outstanding debt. Plaintiff did not pay this amount voluntarily and on June 2, 1995, the Postal Service commenced garnishment proceedings against Plaintiff's paycheck.

Plaintiff received letters of warning in August and September of 1994. The August 1994 letter warned Plaintiff with regard to her failure to be in regular attendance. The September 1994 letter of warning referred to Plaintiff was engaging in conduct "unbecoming a postal employee."

Plaintiff was suspended from her position on three separate occasions. First, Plaintiff was suspended in October of 1994 for failure to follow instructions and failure to be in regular attendance. Plaintiff was also suspended in December of 1994 for failure to follow instructions, failure to follow security procedures and failure to provide a telephone number for business purposes. Finally, Plaintiff was suspended in March of 1995. This suspension was issued because Plaintiff failed to properly secure postal funds and to follow directions.

The ultimate disciplinary action was taken against Plaintiff on June 29, 1995 when the Postal Service issued a Notice of Removal stating that Plaintiff's employment would be terminated on August 1, 1995. The Notice of Removal stated that the action was taken due to Plaintiff's failure to secure postal funds and her failure to follow instructions.

B. *Plaintiff's Allegations of Sexual Harassment*

The factual backdrop of Plaintiff's claim of sexual harassment (and retaliation for complaining thereof) involves Plaintiff's relationship with a co-worker, Harry Ray. Mr. Ray is a relative of Plaintiff, whom she refers to as "Uncle Chuck." Plaintiff's problems with Mr. Ray began when, according to Plaintiff, Mr. Ray exposed himself to Plaintiff at her home in 1987. Plaintiff alleges that in 1992 Ray exposed himself to Plaintiff at the workplace. Plaintiff, however, never reported this incident to her employer.

The first time Mr. Ray's activities came to the attention of the Postal Service was in January of 1994. According to Plaintiff, on January 3, 1994, Ray leaned against Plaintiff in a sexual and inappropriate manner. Plaintiff explained that she did not report Mr. Ray's activities on that date because she did not want Ray to get into trouble. Two days later, Ray is alleged to have again acted improperly when he stared at Plaintiff's breasts. Plaintiff informally reported this incident to her supervisor, Tony Prisco. Again, however, Plaintiff was reluctant to pursue the matter because she did not want to make trouble for Ray. Despite Plaintiff's wishes to keep the matter quiet, Prisco reported the January 5 incident to Tony Passenant, Plaintiff's supervisor.

On January 6, 1994, Passenant asked Plaintiff for a statement regarding the incident with Mr. Ray. When Plaintiff refused to give a formal statement, Passenant told her that he would make a report of the incident. On January 7, 1994, Plaintiff was told by Passenant to begin to report to the Ronkonkoma main office until further notice.

The January 3 and 5 incidents involving Plaintiff and Mr. Ray are the only acts of sexual harassment that were ever reported to the Postal Service by Plaintiff.

### C. Plaintiff's Administrative Complaints of Sexual Harassment

The record before this court contains five separate proceedings commenced by Plaintiff complaining of discrimination. As discussed in further detail below, the first complaint alleged sexual harassment based upon the January 3 and 5, 1994 incidents involving Mr. Ray. The remaining four complaints alleged that each disciplinary action taken against Plaintiff was taken in retaliation for her initial complaint of sexual harassment.

#### 1. The First Complaint

Plaintiff's first complaint was made on April 13, 1994, when Plaintiff filed a formal charge of sexual harassment. This complaint bears case number 4A–117–1035–94 (the "First Complaint"). In this First Complaint, Plaintiff alleged that Ray pressed against her body on January 3, 1994 and stared at her breasts on January 5, 1994. Plaintiff also claimed in the First Complaint that the Postal Service retaliated against her for making the complaint of sexual harassment by advising her that she was not entitled to a period of 160 hours of leave without pay.

A final decision was rendered by the Postal Service on Plaintiff's First Complaint in September of 1997. That decision declined to find that Plaintiff was subject to a hostile working environment and, further, held that there had been no retaliation. Plaintiff sought to appeal the decision of the Postal Service on her First Complaint to the United States Equal Employment Opportunity Commission (the "EEOC"). That appeal, however, was dismissed as untimely in a decision dated October 7, 1998.

#### 2. The Second and Third Complaints

Plaintiff's second administrative complaint was filed on January 19, 1995. This complaint alleged that Plaintiff's suspension of October, 1994 was issued in retaliation for the complaints of sexual harassment made six months prior to the suspension. On February 28, 1995, one month after filing the second administrative complaint, Plaintiff filed a third administrative complaint of retaliation. On this occasion, Plaintiff alleged that retaliation was the reason behind her December 1994 suspension. These complaints (numbers 4A–117–1033–95 (the "Second Complaint") and 4A–117–1060–95 (the "Third Complaint")) were consolidated by the Postal Service for investigation and decision. Documents detailing the outcome of the investigation of these complaints are not before the court. It appears, however, that Plaintiff did not prevail.

#### 3. The Fourth and Fifth Complaints

Plaintiff's fourth and fifth complaints of employment discrimination were filed on May 17, 1995 (complaint number 4A–117–1098–95 (the "Fourth Complaint")) and August 29, 1995 (complaint number 4A–117–1165–95 (the "Fifth Complaint")) and were consolidated for investigation by the Postal Service. The Fourth Complaint alleged retaliation in the form Plaintiff's March 1995 suspension as well as the changing of Plaintiff's lunch break to a time inconvenient to her personal schedule. Plaintiff also alleged that she was unfairly blamed for the act of a co-worker. The Fifth Complaint alleged retaliation in the form of the March 1995 suspension, the June 1995 garnishing of Plaintiff's wages and the June 1995 termination of Plaintiff's employment.

On August 9, 1996, the Postal Service issued its final decision regarding the Fourth and Fifth Complaints. This decision held that Plaintiff failed to establish unlawful retaliation. Plaintiff timely appealed this final decision of the Postal Service to the EEOC. The EEOC affirmed the decision of Plaintiff's employer and advised Plaintiff of her right to sue in a decision dated September 22, 1998.

As the above discussion makes clear, each time disciplinary action was taken against Plaintiff, that action was followed

by the filing of a complaint that Plaintiff was being retaliated against for the reporting and complaining of the sexual harassment of Harry Ray.

## II. *Plaintiff's Complaint Here*

Plaintiff, proceeding *pro se,* commenced this action on December 18, 1998. Her complaint alleged that from the "day [she] made the first allegation on 1/7/94 until [her] employment was terminated [she] worked in an extremely hostile environment [where she was] continually harassed by management." Plaintiff further alleged that she was treated differently from her co-workers.

After filing her *pro se* complaint, Plaintiff secured counsel who filed an amended complaint alleging that Plaintiff was terminated and retaliated against due to her complaints of sexual harassment by Harry Ray. The complaint alleged a violation of Title VII and New York law and referred, as acts of retaliation, to the garnishing of Plaintiff's wages and her termination from the Postal Service as well as the changing of Plaintiff's lunch hour and work station.

At a pre-motion conference held with the court, Plaintiff's counsel made clear that the only claim being pursued was a claim for retaliation pursuant to Title VII.

## III. *The Present Motion*

Defendant's motion for summary judgment argues first that Plaintiff fails to set forth a prima facie case of retaliation because she can establish no causal connection between the adverse employment actions alleged and engaging in activities protected by Title VII. In the alternative, defendant argues that even if a prima facie case is found, summary judgment is nonetheless appropriate because defendant has come forward with several non-discriminatory reasons for the acts of the Postal Service and Plaintiff cannot show that any such acts were a pretext for discrimination.

## DISCUSSION

### I. *Legal Principles*

#### A. *Standards For Summary Judgement*

A motion for summary judgement is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d. Cir.1997). However, when the nonmoving party fails to make a showing on an essential elements of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

Summary judgment is not defeated by vague assertions of unspecified disputed facts. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). Moreover, in the context of a case alleging employment discrimination, conclusory allegations of discrimination are insufficient to defeat summary judgment. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). While summary judgment may be inappropriate where intent and state of mind are implicated, "the mere incantation" of these issues does not "operate as a talisman to defeat an otherwise valid motion." Indeed, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Id. see also*

*Weinstock v. Columbia University,* 224 F.3d 33, 41 (2d Cir.2000).

### B. *Elements of a Title VII Retaliation Claim*

Title VII prohibits an employer from discharging an employee based upon, *inter alia,* that employee's sex. 42 U.S.C. § 2000e–2(a)(1). It is further unlawful to retaliate against an employee because of that employee's participation in activities protected by Title VII, such as the filing of a claim of discrimination. *See* 42 U.S.C. § 2000e–3(a). The claim stated here falls into this latter category—it is a claim of unlawful retaliation.

■ To state a *prima facie* case of Title VII retaliation a plaintiff must show: (1) participation in activity protected by Title VII; (2) that the defendant-employer was aware of plaintiff's participation in the protected activity; (3) that the employer took some adverse employment action against the individual; and (4) a causal connection between plaintiff's protected activity and the adverse employment action. *Gordon v. New York City Bd. of Education,* 232 F.3d 111, 116 (2d Cir.2000), quoting, *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993); *see Chu v. City of New York,* 2000 WL 1879851 *3 (S.D.N.Y. December 27, 2000); *Gibson v. Brown,* 1999 WL 1129052 *4–5 (E.D.N.Y. October 19, 1999), *aff'd,* 2000 WL 1843914 (2d Cir. December 14, 2000).

### C. *Burden Shifting Analysis*

Claims of employment discrimination brought pursuant to Title VII are subject to the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weinstock v. Columbia University,* 224 F.3d 33, 42 (2d Cir.2000).

Under the *McDonnell Douglas* analysis, the plaintiff bears the burden of showing a *prima facie* case of discrimination. The burden of production then shifts to defendant to offer a non-discriminatory reason for the employment action. Once this reason is established, the presumption of discrimination arising with the establishment of the prima facie case drops from the matter. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Richardson,* 224 F.3d at 42. Thereafter, it is for the plaintiff to show that the reason offered by defendant is a pretext for discrimination. *Id.* Plaintiff's final burden of showing pretext may be satisfied either by the introduction of additional evidence or by reliance on the evidence submitted in support of the *prima facie* case of discrimination. *See Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

To avoid summary judgment, Plaintiff's evidence must be "sufficient to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [employer] were false, and that more likely than not [discrimination] was the real reason" for the action taken. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996), quoting, *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir. 1994). The determination of whether summary judgment is appropriate is case-specific. The court must examine the entire record to determine whether the plaintiff "could satisfy the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson,* 232 F.3d 83, 90–91 (2d Cir.2000), quoting, *Reeves,* 120 S.Ct. at 2106.

### II. *Disposition of the Present Motion*

#### A. *Plaintiff Fails to State a Prima Facie Case of Retaliation*

Plaintiff has clearly established the first three elements of a prima facie case of retaliation. First, the filing of a claims of employment discrimination are clearly participation in activities protected by Title VII. Second, it is undisputed that Plaintiff's employer, the Postal Service knew of the protected activity. Third, the garnish-

ing of Plaintiff's wages and her termination clearly constituted adverse employment action.[1]

It is with respect to the final element of the prima facie case of retaliation—establishment of a causal connection between plaintiff's protected activity and the adverse employment action—that the parties' differ.

■ A plaintiff may establish a prima facie causal connection by: (1) showing that engaging in protected activity was followed closely in time by the adverse employment action; (2) submitting evidence that other employees who engaged in conduct similar to the Plaintiff were treated unfairly or, (3) proffering evidence of retaliatory animus directed directly toward plaintiff. *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.1987); *Mahoney v. Canada Dry Bottling Co. of New York,* 1998 WL 231082 *3 (E.D.N.Y. May 7, 1998).

In support of the notion that she has established the causal connection necessary to state a prima facie case of retaliation, Plaintiff focuses, almost exclusively, on the events that immediately followed the January 1994 claim of sexual harassment by Harry Ray. Specifically, she points to her transfer to the main branch of the Ronkonkoma post office and the allegations that her duties were changed to those performed by employees of lesser seniority. To form some connection between these events and her June 1995 termination, Plaintiff states, in conclusory fashion, that her termination was a "culmination of a series of individual acts by the defendant that started" when Plaintiff began to complain of sexual harassment.

■ Presumably, the acts Plaintiff refers to are the disciplinary acts taken between January of 1994 and June of 1995. Plaintiff's conclusory statement that these acts were somehow linked to the January 1994 complaint are wholly without support. Plaintiff comes forward with no evidence, direct or otherwise, to support her allegations of retaliation. In opposition to this motion, she has submitted nothing more that her deposition testimony. Although she has had the opportunity to take full discovery, Plaintiff has submitted no testimony, in affidavit form or otherwise, of any discriminatory animus or that others, similarly situated, were also treated in a discriminatory fashion.

This is not a case where a claim of sexual harassment went ignored. The facts here are quite the opposite. It was Plaintiff who was reluctant to come forward and advise her employer of the January 1994 incidents. Plaintiff, not her employer, continually sought to protect Harry Ray. Had it not been for the coaxing of her supervisor, the episode of harassment may never have come to light.

Ultimately, Plaintiff's attempt to show a causal connection between her January 1994 complaint and her June 1995 termination rests upon the thin allegation that every act of discipline imposed by the Postal Service was a fabricated charge intended to punish Plaintiff for complaining of the sexual harassment by Harry Ray. Most importantly, however, nowhere does Plaintiff claim that the shortages in her drawer or the breaches of security procedures of which Plaintiff was accused did not occur. To the contrary, Plaintiff admitted at her deposition to leaving her drawer unlocked (a procedure that she

1. Although Plaintiff's complaint refers to the changing of her lunch hour and work station, it is the court's recollection that these instances were referred to as evidence in support of Plaintiff's claim of unlawful garnishment and termination. To the extent that such allegations were intended to constituted separate adverse employment acts, it is unclear whether they would rise to a level sufficient to

support separate Title VII claims. *See Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 264 (E.D.N.Y.1999) (For change in employment states a Title VII claim only where it "materially affects the terms and conditions" of employment). In view of the holding on this motion, however, it is unnecessary to decide the matter.

alleges to have been, to her knowledge, appropriate). Moreover, Plaintiff agreed to pay the shortages identified in 1993. It was only when she failed to make payments that her wages were garnished.

Even in the allegation that she was subject to discipline only after January of 1994, Plaintiff is mistaken. Indeed, the first and most significant shortages in Plaintiff's drawer were identified in 1993—months before the Postal Service ever became aware of the allegations of sexual harassment.

In light of the foregoing, the court holds that Plaintiff has not come forward with evidence sufficient to establish the causation element of a prima facie case of retaliation. For this reason, defendant's summary judgment motion must be granted.

**B. Even Assuming Establishment of a Prima Facie Case *Defendant is Entitled to the Entry of Summary Judgment***

Even assuming that Plaintiff's attenuated allegations of a temporal connection between her April 1994 complaint of sexual harassment and her June 1995 termination are sufficient to state a prima facie case, summary judgment in favor of defendant would nonetheless be appropriate.

Had Plaintiff established a prima facie case, the burden would, as noted above, shift to defendant to establish a legitimate, nondiscriminatory reason for Plaintiff's discharge. Once such reason was established, the burden would then shift back to Plaintiff to show that the reason articulated was a pretext for discrimination. *See Richardson*, 224 F.3d at 42.

Defendant has more than met the requirement of showing a legitimate nondiscriminatory reason for terminating Plaintiff. Indeed, defendant has shown several. On six separate occasions Plaintiff's cash drawer was significantly short. Additionally, defendant documents three instances where Plaintiff failed to follow proper postal service security procedures.

These instances more than establish legitimate reasons for Plaintiff's discharge.

In the face of this clear evidence, Plaintiff comes forward with no evidence to show that the reasons set forth by the Postal Service were a pretext for discrimination. As described above, Plaintiff relies solely on the attenuated temporal connection set forth above. Plainly, this connection is insufficient to support any notion of pretext. Accordingly, even assuming that Plaintiff has sufficiently set forth a prima facie case of retaliation, summary judgment is nonetheless properly granted to defendant.

*CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to close this case.

SO ORDERED