**Ruben D. VARGAS, Plaintiff,**

**v.**

**Stanley HILL, D.C. 37, and Local 371, Defendants.**

**No. 98 Civ. 3377(VM).**

United States District Court, S.D. New York.

March 29, 2001.

Ruben D. Vargas, New York, NY, pro se.

Joel Giller, New York, NY, for Stanley Hill.

Jeffrey L. Kreisberg, Kreisberg & Maitland, P.C., New York, NY, for Local 371.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Ruben D. Vargas alleges that defendants District Council 37, SSEU Local 371 and Stanley Hill discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that they breached the duty of fair representation in the handling of certain grievances he filed against his employer, the City of New York. Before the Court is defendants' summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

### FACTS [1]

Ruben Vargas ("Vargas"), a native of the Dominican Republic, began his employment with New York City's Department of Parks and Recreation (the "Department") in September 1989. His civil service title was Community Associate, and his office title was Park Enforcement Patrol. Vargas was a member of defendant SSEU Local 371 ("Local 371"), a local

public employee labor organization that represents individuals employed by the City of New York (the "City"). Defendant District Council 37 ("D.C.37") is an intermediate public employee labor organization and the parent body of Local 371. Defendant Stanley Hill ("Hill") is the former executive director of D.C. 37.

On March 13, 1996, Vargas filed two grievances against the Department (the "March Grievances").[2] In his first grievance, Vargas claimed that since January 29, 1995 he had been assigned out-of-title duties above those of his job specification and sought an adjustment in title—from Community Associate to Community Coordinator—and recovery of the difference in salary between the Community Coordinator and Community Associate positions. *See* Moore Aff., Ex. D. In the second grievance, Vargas sought payment of over 200 hours in overtime allegedly worked from January 29, 1995 through March 1996. *See id.*, Ex. F.

At the time the March Grievances were filed, Local 371 and the City were parties to a collective bargaining agreement (the "Agreement") which covered Vargas. The four step procedure relevant to the grievances is defined and described in Article VI of the Agreement. *See id.*, Ex. B. According to Section 2 of that Article, either an employee or the union may present a grievance at Step I, and either may appeal any adverse decision to Step II. An appeal from an unsatisfactory determination at Step II may be presented by the employee and/or the union in Step III. An appeal from a Step III decision may be brought to arbitration solely by the union.

---

1. The relevant facts are based on Vargas's testimony at his deposition in this matter taken on November 25 and December 22, 1998 and certain exhibits submitted in connection with the motion.

2. On March 18, 1996, the March Grievances were amended. *See* Affidavit of Faryce B. Moore, sworn to Jan. 21, 2000 ("Moore Aff."), Ex. E.

The March Grievances were not resolved at Step I or Step II and were appealed to Step III. Joseph Nazario ("Nazario"), a representative employed by D.C. 37 to assist Local 371 with the processing of grievances, represented Vargas when these grievances were taken to a consolidated Step III hearing on February 14, 1997.

On March, 21, 1997, the City's Office of Labor Relations ("OLR") rendered a decision in connection with the March Grievances (the "OLR Decision"). *See id.*, Ex. H. The OLR Decision concluded that Vargas was not entitled to overtime compensation because the Department had not authorized such overtime in writing. *See id.* In addition, the OLR Decision sustained the out-of-title grievance, finding that Vargas had been performing duties as a Community Coordinator and directing that Vargas be paid the difference between his salary as a Community Associate and that of a Community Coordinator for the period from March 13, 1996—the day Vargas filed his Step I grievance—through March 18, 1996—the date his out-of-title assignment ended.[3] *See id.* Vargas claims, for reasons not explained in the record, that he has not yet been paid the money which the Department was directed to pay after the Step III hearing.

Nazario apparently recommended to Local 371 that the March Grievances be taken to Step IV, but advised Vargas that the decision whether to proceed in such a manner could be made only by the union. The record indicates that Vargas spoke with several union representatives about an appeal to Step IV; requested that Local 371

bring the March Grievances to arbitration; and was told that Local 371 had declined to proceed to Step IV because the union did not want to pay for an attorney where it believed that Vargas could obtain no additional relief in an arbitration. By letter dated June 2, 1997, Local 371 informed Vargas that it had declined to take the March Grievances to arbitration because Vargas never requested prior or post-authorization for overtime and had his other grievance substantiated and that the decision to pursue arbitration is at "the discretion of the Union." *Id.*, Ex. I.

Vargas filed a third grievance on July 24, 1996 (the "July Grievance"). *See id.*, Ex. G. This grievance related to another out-of-title complaint, alleging that since April 8, 1996 Vargas was performing duties other than those of his civil service title. Vargas received no response at Step I and took the grievance to Step II. *See id.*, Ex. L. On August 16, 1996, the Department issued its Step II decision denying the July Grievance on the ground that Vargas "has been assigned in-title duties." *Id.*, Ex. M. Neither Vargas nor the union appealed this decision to Step III.

On September 4, 1997, Vargas filed an EEOC Charge alleging national origin discrimination because defendants "failed to take [his] grievance to Step IV" and "stated they did not want to have to pay an attorney to pursue it to the final step, especially because they didn't think [he] would win the grievance." Affidavit of Jeffrey L. Kreisberg, sworn to Jan. 21, 2000, Ex. B. Vargas failed to include or

---

**3.** Under section two of Article VI of the Agreement, "no monetary award shall in any event cover any period prior to the date of the Step I grievance unless such grievance has been filed within thirty (30) days of the assignment to alleged out-of-title work." Moore Aff., Ex. B. Since Vargas's first grievance was

not filed until March 13, 1996 and his work assignment was changed (and out-of-title work ceased) on March 18, 1996, compensation was only for this period. *See* Affidavit of Joseph Nazario, sworn to Jan. 19, 2000 ("Nazario Aff."), ¶ 6.

refer to the July Grievance in the EEOC Charge.

On May 13, 1998, Vargas commenced this case, as well as another action in this District arising from similar facts. In that suit, brought against the City and the Department's Commissioner, Vargas alleged national origin discrimination and retaliation for his filing a charge of discrimination with the EEOC. *See Vargas v. Stern,* 98 Civ. 3376 (S.D.N.Y. May 13, 1998).

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only if the moving party establishes by sufficient evidence that the action presents no genuine issue as to any material fact and the movant is therefore entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The role of the Court is to determine whether there are any genuine issues of material fact to be tried, not to decide them (*see Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994)), while resolving ambiguities and drawing all reasonable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden and is required to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [that] show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The party opposing the motion must then demonstrate, from the evidentiary record so developed, that a genuine dispute as to a material fact does exist;

the opponent cannot rely solely on pleadings or conclusory factual allegations. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the opposing party must present specific evidence supporting its contention that there is a genuine issue of material fact to be tried. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file', designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). To show such a genuine dispute, the opposing party must proffer sufficient evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### II. VARGAS'S CLAIMS

#### A. National Origin Discrimination

■ Vargas claims that, on account of his national origin, defendants: failed to provide him with fair representation in the grievance proceedings; refused to take the March Grievances to Step IV; and refused to prosecute the July Grievance beyond Step II. *See* Second Amended Compl., ¶¶ 9–11. Defendants argue that summary judgment is appropriate because the evidence "fails to establish any of the elements necessary for plaintiff to prevail on such a claim." Defendants' Memorandum of Law in Support of Motion, dated Jan. 20, 2000 ("Defendants' Memo"), at 1.

In order to establish a claim under Title VII resulting from a union's breach of the

duty of fair representation, a plaintiff must show that (a) the employer committed a violation of the collective bargaining agreement; (b) the union permitted the violation to go unrepaired, thereby breaching its own duty of fair representation; and (c) the union was motivated by racial animus. *See Bugg v. International Union of Allied Indus. Workers, Local 507 AFL–CIO*, 674 F.2d 595, 598 n. 5 (7th Cir.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); *Ross v. Communication Workers of America, Local 110*, No. 91 Civ. 6367, 1995 WL 351462, *6 (S.D.N.Y. June 9, 1995), *aff'd*, 100 F.3d 944, 1996 WL 80688 (2d Cir.), *cert. denied*, 519 U.S. 835, 117 S.Ct. 108, 136 L.Ed.2d 61 (1996).

In this case, even if the Court were to assume Vargas has demonstrated that the Department violated the Agreement and that the union failed to remedy any such violation,[4] Vargas still has failed to proffer any evidence to indicate that defendants acted with any racial animus. The only allegations Vargas has articulated in connection with his claim are that (1) he is Dominican (*see* Plaintiff's More Evidences [sic], dated Apr. 13, 2000 ("Plaintiff's More Evidence"), ¶ 1); (2) Local 371 has 43 employees, none of whom are Dominican,[5] and that D.C. 37 never indicated during discovery that it had any Dominican employees (*see* Plaintiff's Memorandum in Opposition to Motion, dated March 27, 2000 ("Plaintiff's Memo"), at 2; Plaintiff's More Evidence, ¶¶ 52, 54); (3) "everyone" at Local 371, including the decisionmakers, principal officers and the individuals with whom Vargas had spoken about the March Grievances, was non-Dominican, "African-American, [n]ot of the Dominican Ances-

try" (Plaintiff's More Evidence, ¶ 30; Vargas Dep. Tr. at 67, 253–288; Plaintiff's Memo at 1); (4) certain non-Dominican Department employees had the proper civil servant titles and salaries (*see* Plaintiff's More Evidence, ¶¶ 14–18); (5) he had reason to believe that if he had been African-American, defendants would have initiated Step I of the March Grievances (*see* Plaintiff's More Evidence, ¶ 34); (6) he was subjected to "much less favorable" treatment than non-Dominican employees (Plaintiff's Opposition to Defendants' Statement of Material Facts, dated March 27, 2000, at 1); and (7) that he was intentionally discriminated against because of his "Dominican national origen [sic]." *Id.*

The Court concludes that these allegations, even drawn in the light most favorable to Vargas, are insufficient as a matter of law to raise an inference of such discrimination or to establish Vargas's prima facie claim. The foregoing allegations are conclusory and without any support. Such conclusory allegations are insufficient to satisfy the requirements of Rule 56(e). *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Because Vargas's allegations of national origin discrimination are unsupported by evidence in the record, he has failed to raise a genuine issue of material fact that would preclude summary judgment. Moreover, even if Vargas could establish his prima facie case, defendants have proffered a legitimate, non discriminatory reason for their actions (*see* discussion, *infra*), and Vargas has not introduced any evidence that the reason was a pretext for discrimination. *See Chambers v. TRM*

---

4. A union breaches the duty of fair representation only when its conduct is arbitrary, discriminatory or in bad faith (*see* discussion, *infra*), and the Court finds that Vargas has failed to demonstrate sufficiently the presence of such severe conduct here.

5. Vargas has argued that this figure reflects Dominican-origin discrimination at Local 371 by statistical imbalance. *See id.*, ¶ 53.

*Copy Ctrs. Corp.*, 43 F.3d 29, 37–38 (2d Cir.1994). Accordingly, defendants' motion for summary judgment on the Title VII claim is granted.

### B. *Duty of Fair Representation*

Vargas contends that defendants breached their duty of fair representation "[b]y not taking plaintiff's first grievance to Step IV and in refusing to take his third grievance past Step II" (Second Amended Compl., ¶ 14), claiming that the March Grievances should have been taken to arbitration and that the July Grievance should have been taken to Step III. *See* Plaintiff's Memo at 2. Vargas also argues that defendants' decision "not to take these grievances further" was arbitrary and capricious; discriminatory; in bad faith; and constituted a reckless and malicious disregard of his rights. Second Amended Compl., ¶¶ 15–16; *see also* Plaintiff's More Evidence, Material Facts ## 4, 14, 16. Defendants assert that this claim must be dismissed because it is barred by a four month statute of limitations. *See* Defendants' Memo at 2, 10.

■ A claim for breach of the duty of fair representation is comprised of two elements. *See Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir.1989). First, Vargas must demonstrate that the union's conduct was "arbitrary, discriminatory or in bad faith." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Second, Vargas must show that the union's acts or omissions "seriously undermine[d] the arbitral process." *Id.* (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).[6]

■ A union's conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness', as to be irrational." *White*, 237 F.3d at 179 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998)). The " 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.*, (quoting *Marquez*, 525 U.S. at 45–46, 119 S.Ct. 292). "Bad faith requires a showing of fraudulent, deceitful, or dishonest action." *See Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 472 (2d Cir. 1999).

Here, Local 371 determined that there was "no substantial likelihood of success in arbitration" with respect to the March Grievances. Moore Aff., ¶ 13. The union's decision not to bring these grievances to arbitration was based on a determination that they could not be won and were unlikely to receive any further favorable treatment. *See id.*, ¶ 16. As defendants' counsel noted, the union had decided that Vargas "either had obtained all the relief he could have been entitled to, or in the case of one grievance, it was the feeling of the union that no relief could be obtained." Transcript from Hearing, dated Nov. 12, 1999, at 6.

In response to these assertions, Vargas now claims that defendants did not thoroughly investigate his grievances (*see* Plaintiff's Memo at 1–2) and did not subpoena or gather any documents; did not subpoena any witnesses; did not go to his

---

**6.** More recently, the Second Circuit has held that the second element requires a plaintiff to prove that "there was 'a causal connection between the union's wrongful conduct and [his] injuries.' " *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir.2001) (quoting *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir.1998)). This Court need not consider the second element of Vargas's claim because it finds that he has not satisfied the first element.

work place to gather evidence for the Step III hearing; and went to the Step III hearing unprepared. *See* Plaintiffs' More Evidence, Material Fact # 6, ¶ 42.

The Court notes that these assertions do not support Vargas's claim here, which is that the breach of the fair representation duty resulted from the union's refusal to take the March Grievances to Step IV. Moreover, the record indicates that defendants did make efforts to assist Vargas with his grievances, a fact which Vargas does not dispute. For example, Nazario consulted with Vargas in preparation for the Step III hearing and represented him at the hearing (*see* Nazario Aff., ¶ 6); recommended that the March Grievances be brought to Step IV; and signed Vargas's request to present his July Grievance to Step II. *See* Moore Aff., Ex. L.

The Second Circuit considered and rejected a similar claim where a union allegedly failed to prepare for a meeting with an employer and for the arbitration hearing; to call particular witnesses; to present certain evidence at the hearing; and to advocate the employee's case with appropriate vigor, holding that the allegations "taken singly or collectively, were insufficient to make out a prima facie case of a breach of the duty of fair representation." *Gorham v. Transit Workers Union of America,* No. 98 Civ. 313, 1999 WL 163567 (S.D.N.Y. March 24, 1999), *aff'd,* 205 F.3d 1322, 2000 WL 232078 (2d Cir.), *cert. denied,* 531 U.S. 884, 121 S.Ct. 200, 148 L.Ed.2d 140 (2000) (quoting *Barr,* 868 F.2d at 43). In addition, it is well-established that a union member does not have an absolute right to have his grievance taken to arbitration. *See Vaca,* 386 U.S. at 191, 87 S.Ct. 903; *Ross,* 1995 WL 351462, at *9. Indeed, the union, to ensure that its limited resources are used properly and to maintain credibility in management's eyes, has wide discretion to determine whether certain grievances warrant arbitration.

Finally, while the March 21, 1997 OLR Decision clearly indicated that a failure by the union to proceed to arbitration within fifteen days would waive its right to arbitration and the union waited until June 2, 1997 to advise Vargas, the failure to keep Vargas informed of the status of the grievances and the union's failure to respond within fifteen days, without more, is insufficient to demonstrate the arbitrary or capricious processing of claims, especially where, as here, there can be no prejudice to Vargas because the decision rested solely within the union's discretion. *See Beckman v. United States Postal Serv.,* 79 F.Supp.2d 394, 404–05 (S.D.N.Y.2000).

Regarding the July Grievance, Vargas claims specifically that defendants did not take the grievance to Step III and that he did not ask anyone not to proceed to Step III (*see* Plaintiff's Facts About the Grievance, dated March 27, 2000, ¶ 4); that he did not know he could have presented the July Grievance to Step III on his own (*see id.,* ¶ 5); and that he did not know how to file for Step III. *See id.,* ¶ 6. Vargas also argues that no one at the union showed him how to file for Step III (*see id.* ¶ 7) or informed him that he could file a Step III proceeding himself. *See id.,* ¶¶ 8–12.

The record is clear that Vargas never appealed the denial of the July Grievance to Step III. Under the Agreement, Vargas could have proceeded on his own; section 2 of Article 6 states that an appeal from an unsatisfactory Step II determination may be presented in Step III by the employee and/or the union. *See* Moore Aff., Ex. B. In addition, the Department determined that the July Grievance lacked merit because Vargas's duties—as found by the Step II officer—were actually within the scope of his job specification. *See id.,* Ex. M. Vargas has failed even to address this substantive point.

Based on a review of the record, and after drawing all reasonable inferences in

**322**

Vargas's favor, the Court concludes that Vargas has failed to demonstrate that defendants' acts or omissions constitute conduct that is arbitrary, discriminatory or in bad faith. Accordingly, summary judgment is appropriate on Vargas's second claim.

In addition, defendants have maintained that Vargas's claim for breach of the duty of fair representation is untimely because of a four month statute of limitations. *See* Defendants' Memo at 10. Under this approach, Vargas was advised by a June 2, 1997 letter that the union would not be proceeding to arbitration with the March Grievances. *See id.* He knew or should have known on or about August 16, 1997 about the denial of the July Grievance at Step II and therefore should have filed the instant complaint before May of 1998. *See id.* The Court concludes that summary judgment is appropriate because this claim also is time-barred.[7]

### CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Vargas has failed to establish a prima facie case supporting his Title VII and duty of fair representation claims. Accordingly, it is hereby

**ORDERED** that defendants' motion for summary judgment on both claims is granted.

The Clerk of Court is directed to enter judgment for defendants and to close this case.

**SO ORDERED.**

---

7. There is case law indicating that the appropriate statute of limitations may be six months. *See Schaefer v. Erie County Dep't of Social Servs.*, 82 F.Supp.2d 114, 117 (W.D.N.Y.2000); *Williams v. Local 1199,* No.

97 Civ. 9200, 1999 WL 435152, *3 (S.D.N.Y. June 24, 1999); *Gorham,* 1999 WL 163567, at *5. The Court finds that Vargas's claim would be untimely even if the relevant statutory period were six months.